COMMONWEALTH vs. LEO McDERMOTT.

Norfolk.   March 2, 1964. — April 3, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Search and Seizure.   Arrest.   Evidence,* Illegally seized material.

In criminal proceedings for violation of G. L. c. 271, §§ 7, 17, on evidence, and warrantable inferences, that a police officer in a restaurant saw the defendant take horse racing and number pool bets and place memoranda thereof in his pocket, that the officer pointed out the defendant to two other officers who had a search warrant for the restaurant premises authorizing, among other things, arrest of "persons . . . there found participating in any form of gaming" and "all persons present . . . if any . . . [gaming implements] are found" and seizure of such implements, that the other two officers then took the defendant to another part of the premises, showed the warrant, and requested the defendant to empty his pockets, which he did, that the betting memoranda were among the articles in his pockets, that the defendant admitted having taken bets for some months, and that the two officers then arrested the defendant, there was no error in denial of a motion to suppress the memoranda or in admission thereof in evidence at the trial.

COMPLAINTS received and sworn to in the District Court of Northern Norfolk on May 8, 1962.

On appeal to the Superior Court a motion to suppress was heard by *Snow,* J., a District Court judge sitting under statutory authority, and the trial was before him.

*James F. Freeley, Jr.,* for the defendant.

*A. T. Handverger,* Assistant District Attorney, for the Commonwealth.

WILKINS, C.J.   The defendant is charged with two complaints under G. L. (Ter. Ed.) c. 271: (1) under § 17, that on May 7, 1962, in Needham he "did register a bet upon the result of a contest of speed of a certain beast, to wit, a horse"; and (2) under § 7, that on the same date he "was concerned in setting up a certain lottery for money." The cases were originally heard in the District Court of Northern Norfolk, and upon findings of guilty were appealed to the Superior Court.   Before trial there was filed a motion

to suppress evidence of three State police officers which was alleged to have been obtained contrary to the laws of this Commonwealth and the Constitution of the United States. The motion was denied, and the defendant excepted. At the jury trial the same evidence was admitted subject to the defendant's exception, and the defendant was found guilty on both complaints.

We first state the testimony of Trooper Nielsen. He was assigned to place under surveillance "Robert's Lunch," a restaurant in Needham. On May 3 and 4, 1962, about noon he saw the defendant in "Robert's Lunch" registering or taking bets on horses and number pool plays. Nielsen was dressed in working clothes and sitting at a table with truck drivers. The defendant was a stock clerk in a factory near by. On May 7 Nielsen and Lieutenant Kerrigan went to the District Court of Northern Norfolk and obtained a search warrant ("commonly called a bookie warrant") under G. L. c. 271, § 23 (as amended through St. 1953, c. 319, § 30).

The warrant, addressed to the State police, among others, recited that Nielsen had made oath that he suspected and had probable cause to suspect that the rooms in the one story cement building situated at 120 Highland Avenue, known as "Robert's Lunch," were unlawfully used as a common gaming house for the purpose of gaming for money and other property, and that divers persons whose names were unknown to Nielsen resorted to the rooms for that purpose. The warrant authorized the police to enter the rooms "to arrest the keepers thereof, and all persons in any way assisting in keeping the same, . . . and all persons who are there found participating in any form of gaming, and all persons present, whether so participating or not, if any lottery, policy or pool tickets, slips, checks, manifold books or sheets, memoranda of any bet, or other implements, apparatus or materials of any form of gaming are found in said place, and to take into . . . custody all the implements, apparatus or materials of gaming as aforesaid, and all the personal property, including money, furniture and fixtures there found . . . ."

We summarize further testimony of Nielsen. He never obtained a warrant for the arrest of the defendant. On May 7 about 12:05 P.M. he again went to "Robert's Lunch" and sat at a table with a group of truck drivers who were at lunch. A few minutes later the defendant came in and sat at a table with other customers. A truck driver approached the defendant's table, and spoke to the defendant. The truck driver mentioned the name of a race horse, and the defendant wrote something in a notebook which Nielsen, although he could not see, believed to be the name of the horse. Nielsen saw the defendant speak with another truck driver and write down a number or series of numbers which the truck driver had given him. The defendant gave the truck driver a slip of paper on which, although the witness could not make them out from where he was sitting, appeared to be a series of number plays. The truck driver gave the defendant some United States coins. At 12:20 P.M. Lieutenants Kerrigan and Moriarty entered the restaurant. Nielsen approached them and pointed out the defendant, saying, "That is Leo, he's got the stuff in his pockets." The lieutenants showed their badges to the defendant and informed him that they were State police officers. They asked him to step to the back of the restaurant which was separated by a partition, and the defendant complied. About five minutes later Nielsen went behind the partition, where he saw the two lieutenants questioning the defendant, and observed booking paraphernalia, notebooks, and personal belongings of the defendant spread on a counter. The lieutenants, and not Nielsen, arrested the defendant.

Evidence introduced through Lieutenants Kerrigan and Moriarty was to the effect that they had never been to the premises before May 7, and had never seen the defendant before. They did not see any gambling or gambling apparatus at "Robert's Lunch" prior to taking the defendant to the back of the restaurant, where they produced the search warrant and asked him to empty his pockets. Among the paraphernalia produced by the defendant were a notebook containing a series of numbers and a multicolored card on

the back of which was written the name of a horse. Lieu-
tenant Moriarty was the officer in charge of the investiga-
tion. He gave expert testimony as to the meaning of the
numbers in the notebook and as to the significance of the
multicolored card.

We summarize testimony of Lieutenant Kerrigan. It
was after the lieutenants found the material from the de-
fendant's pockets that they placed him under arrest. Prior
to his arrest the defendant admitted that he had been en-
gaged in gambling activities during the past six months and
had made approximately $20 weekly by taking bets and
writing numbers and horses. No other patrons of the res-
taurant were arrested or were asked to empty their pockets,
and no gambling apparatus was found on the premises other
than that produced by the defendant.

The warrant was both a search and an arrest warrant.
It was authorized by G. L. c. 271, § 23. It was validly issued
in the language of the statute. There was probable cause
for its issue in what Trooper Nielsen had observed on May
3 and 4. It not only empowered the making of a search,
but it also authorized the arrest of anyone found partici-
pating in any form of gaming. This is independent of, and
in addition to, the authorization to arrest participants and
nonparticipants if gaming implements are found. In this
case both situations obtained. On May 7 Trooper Nielsen
saw the defendant in the act of registering bets. The de-
fendant, therefore, was found participating in a form of
gaming. Trooper Nielsen saw the defendant in the posses-
sion of, and in the active use of, gaming materials, and it is
a clear and necessary inference that he saw the defendant
put them in his pocket. Materials for gaming, therefore,
were found on the premises before the defendant emptied
his pockets.

It is without significance that Trooper Nielsen was not
one who made the arrest. The three officers were engaged
in a coöperative effort in the performance of their duty.
The knowledge of one was the knowledge of all.

Violation of G. L. c. 271, §§ 7 and 17, was a misdemeanor.
There was no breach of the peace, but the arrest was pur-

suant to a lawful warrant.   See *Commonwealth* v. *Laudate,*
345 Mass. 169; *Commonwealth* v. *Berwick,* 346 Mass. 5.   In
*Commonwealth* v. *Mekalian,* 346 Mass. 496, there was no
warrant.

The *Laudate* case was expressly based upon the existence
of a valid warrant (pages 172–173).   There was no intima-
tion that an argument based upon the right of search inci-
dent to a lawful arrest could be soundly advanced.

There was no error in the denial of the motion to sup-
press nor in the admission of the same evidence at the trial.

*Exceptions overruled.*