**UNITED STATES of America,
Appellee,**

v.

**Richard PALMER, Defendant, Appellant.**

**No. 7684.**

United States Court of Appeals,
First Circuit.

Dec. 14, 1970.

George M. Carlton, Jr., Bath, Me., with whom Joseph E. Brennan, Portland, Me., was on the brief, for appellant.

Peter Mills, U. S. Atty., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a conviction for possession of an unregistered firearm, to wit, a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d), (Supp. V,

1970).[1] Briefly, the salient facts are as follows. Defendant operated a business known as "Dick's Gun Repair Shop" in the basement of his home in Topsham, Maine. On October 18, 1969, several treasury agents arrived there seeking to arrest the defendant on a warrant charging him with making a false statement on his gun dealer's license application. Defendant, who was also in the propane gas business, was not home at the time and the gun shop was closed. Thereupon, two of the agents and a state trooper went looking for and found him at a customer's house where he was doing some work in connection with his propane gas business.[2] After identifying themselves but not telling him about the warrant, they asked if he would return to his home, which he did. Upon his arrival there defendant immediately opened up and entered his gun shop. The agent who had the warrant followed him in, identified himself, served the warrant and gave the defendant the usual Miranda warnings. The other agents also entered the shop about the same time. One of the agents asked him, among other things, if he had any machine guns or sawed-off shotguns on the premises. Defendant pointed to the sawed-off shotgun in question which was lying on a work bench a few feet away. When questioned as to where he got it, defendant stated that a customer, whom initially he identified only as a chicken farmer, had brought it in for *repair*.[3] Thereupon one of the agents took custody of the gun. Shortly thereafter defendant was indicted, not for making a false statement on his license application, but for possession of the sawed-off shotgun which was not registered to him.

Defendant made a pretrial motion to suppress the shotgun as evidence on the ground that it was illegally obtained. After an evidentiary hearing, this motion was denied and the case proceeded to trial before a jury.[4] At the conclusion of the government's case defendant moved for a judgment of acquittal on the ground of insufficient evidence. This motion was also denied; whereupon the defendant rested. Following the court's charge to the jury, defendant requested the court to give the following instruction: "if the Jury should find that the weapon was in the shop for repairs, then they must return a verdict of not guilty. * * *" The court refused to give this instruction and the case then went to the jury.[5] A verdict of guilty was returned later the same day.

On appeal, defendant claims that his motion to suppress the sawed-off shotgun as evidence should have been granted on the ground that the gun was obtained as a result of an illegal search and seizure. We find no merit in this contention. To begin with, the government agents entered the gun shop legally. Defendant opened the door to it of his own volition and willingly admitted them. Also, under 26 U.S.C. § 7606(a) (1964)[6] the agents had authority to enter and inspect the shop anyway. No

---

1. "It shall be unlawful for any person * * * (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; * * *"

2. The other agents, including the one who had the warrant, remained at the defendant's residence.

3. He later stated that the customer's name was Chapman and that he came from Richmond, Maine.

4. The government produced evidence substantially as set forth above. It also introduced two official certificates from the Treasury Department stating that

there was no evidence in the National Firearms Registration and Transfer Record that this shotgun was registered to the defendant or to said Chapman of Richmond, Maine.

5. The defendant offered no evidence but after he rested he renewed his motion for judgment of acquittal which was again denied.

6. "The Secretary or his delegate may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced or kept, so far as may be necessary for the purpose of examining said articles or objects."

search was made for the shotgun in question; indeed none was necessary. The defendant pointed to it lying in open view on a nearby work bench from which an agent took immediate custody of it. As was stated in Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968), "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." We think that the agents here not only had the right but under the circumstances also had a duty to seize the shotgun in question as evidence of possible violation of 26 U.S. C. § 5861(d). Cf. United States v. Paradise, 334 F.2d 748, 750 (3d Cir. 1964). See generally United States v. Berkowitz, 429 F.2d 921 (1st Cir. 1970); Manni v. United States, 391 F.2d 922 (1st Cir.), cert. denied, 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed.2d 143 (1968).

 Next, defendant attacks the validity of the arrest warrant on the ground that the affidavit upon which it was based was insufficient. From this he concludes in essence that the search and inspection of his gun shop were not incident to a lawful arrest and were therefore illegal. This contention does not impress us. In view of our discussion *supra* of the circumstances under which the agents entered the gun shop and seized the sawed-off shotgun, we see no need to deal with this objection. Nor are we impressed with defendant's further argument that his arrest was constitutionally void because it was delayed in order to afford the agents an opportunity to search his premises as an incident to the arrest. There is no evidence to support this contention. Furthermore, the record shows that the agent who obtained the warrant first went to the defendant's premises to serve him there. Not finding him at home he remained on the premises with the warrant until the defendant was located and returned home. Thereupon he arrested him almost immediately. We see nothing improper about this procedure under the circumstances of this case. There is no evidence of any pretext. Moreover, as we said in *Berkowitz, supra,* "We are unaware of any right of a defendant to be arrested at a particular time." 429 F.2d at 926.

 The final question is whether the district court erred in refusing to give defendant's requested instruction that, if the jury should find that the sawed-off shotgun was in the defendant's shop for repairs, they must return a verdict of not guilty. The uncontradicted evidence was that defendant told the treasury agents that the gun had been left with him for repairs by one Chapman. We may concede, for present purposes, that a delivery for such a limited purpose was not a "transfer" within the meaning of 26 U.S.C. § 5845(j) (Supp. V, 1970)[7] and that there was therefore no taxable event.[8] It does not follow, however, that there was no violation of 26 U.S.C. § 5861(d).[9] The defendant argues that this subsection was meant to reach only persons explicitly required to register firearms pursuant to 26 U.S.C. § 5841(b) (Supp. V. 1970).[10] We do not agree. Such persons are already covered by 26 U.S.C. § 5861(b)

---

7. 26 U.S.C. § 5845(j) (Supp. V, 1970) provides: "The term 'transfer' and the various derivatives of such word, shall include selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of."

8. 26 U.S.C. § 5811(a) (Supp. V, 1970) imposes a tax on the transfer of a sawed-off shotgun.

9. See note 1 *supra.*

10. "Each manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes. Each firearm transferred shall be registered to the transferee by the transferor." Defendant argues that, as a mere bailee, he does not fall within the statutory definition of "transferee," note 7 *supra,* and was therefore not required to register the firearm.

(Supp. V, 1970).[11] Subsection (d) goes further, in our opinion, and reaches *any* person in possession of a registrable gun if he is not himself the registered owner. In other words, persons not registered are not entitled to possession.[12] Congress has a direct, tax-oriented interest in that broad provision, *viz.*, to secure its interest in the collection of the tax. We have already held in another connection that it is not necessary that restrictions fall only on taxpayers. United States v. Davidson, 428 F.2d 461 (1st Cir.), cert. denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149 (1970). This interest is well demonstrated in the case at bar. Defendant admits he has not paid the tax but says he does not owe one. In the meantime, the alleged true owner has certainly not paid any tax either because he never registered the gun and has not even been discovered.

Still further exception can be imagined if a defendant can escape the provisions of § 5861 by asserting he is not a transferee within the meaning of § 5845(j). It is at least arguable that an owner who lost a firearm did not "dispose" of it, so that "finders" would not be covered. We believe that § 5861(d) was enacted in broad terms to obviate such inquiries and that it was irrelevant whether the defendant was a transferee obliged to register.

For these reasons the requested instruction was erroneous and was properly refused.

Affirmed.

---

11. 26 U.S.C. § 5861(b) makes it illegal "to receive or possess a firearm transfered to him in violation of the provisions of this chapter."

12. When the statute was amended in 1968, Congress "extend[ed] the registration obligation to all possessors of * * * weapons" which were firearms. 1968 U.S. Code Cong. & Admin.News, p. 4435. "Under the amendment," Congress said, "registration of every weapon covered by the Act as amended * * * would be re-

quired." 1968 U.S.Code Cong. & Admin. News, p. 4434; *see also* 26 U.S.C. § 5812 (Supp. V, 1970) (annotation). This was an intentional change from the previous statute which had required registration of only those firearms made, imported, or transferred illegally. Internal Revenue Code of 1954, ch. 53, § 5841, 68A Stat. 725. We might further point out that, if § 5861(d) covered only transferees, it would have no purpose independent of § 5861(b).