COMMONWEALTH *vs.* ROY L. CHAISSON
(and four companion cases [1]).

Suffolk.    December 7, 1970. — January 28, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Arrest.    Search and Seizure.    Larceny.*

Police officers in radio-equipped unmarked cars undertaking a surveillance of a large warehouse one Saturday night after business hours in charge of an officer familiar with the area had probable cause to arrest four uniformed security guards observed over a period of several hours going in and out of the building or driving various vehicles into it, of whom one moved a vehicle into the warehouse and walked out later and then apparently attempted to warn the others of the presence of the police officers, another gave evasive replies to questions by the officers, and the other two appeared to be acting in concert with the first, and the arrests were lawful; any seizure was lawful; and conviction of the defendants of attempted larceny was warranted.

COMPLAINTS filed in the Municipal Court of the Roxbury District on April 28, 1969.

Upon appeals to the Superior Court, the cases were tried before *Bennett, J.*

*Robert V. Costello* for the defendants.

*William F. Linnehan,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.    The cases are here on the defendants' appeals after their conviction of attempted larceny of 234

---

[1] The companion cases are Commonwealth *vs.* Roy L. Chaisson; Commonwealth *vs.* Roger D. Chaisson; Commonwealth *vs.* John T. Lane; Commonwealth *vs.* John A. Maturo.

Commonwealth *v.* Chaisson.

cases of liquor from the S. S. Pierce Company, Inc., warehouse at 133 Brookline Avenue, Boston. The defendant Roy L. Chaisson was also convicted of carrying a revolver without a permit.

The evidence is summarized. On Saturday, April 26, 1969, between 6:30 and 8:00 P.M. approximately seven Boston police officers stationed in three radio-equipped unmarked cars, undertook a surveillance of the S. S. Pierce building at 133 Brookline Avenue. The premises comprised six floors, a basement, and various shipping and loading platforms, garages and docks. The building was closed for business on Saturday evening as was the custom. All four defendants were employees of the Northeast Security Company. They had once worked together for another security organization. The defendant Roger D. Chaisson replaced one Addison as security guard at 5:15 P.M. Addison testified that when he left everything was quiet and the shipping area was clear.

During their surveillance the police observed uniformed men going in and out of the building moving various vehicles about. At 7 P.M. the police observed a black Dodge van, a Ryder rental truck and a Plymouth sedan parked in the area. At approximately 8:30 P.M. the police observed one of the defendants, John Lane, come out to Brookline Avenue and look around. At about 11 P.M. the police saw the defendants Lane, Maturo and Roy Chaisson leave the premises together. Maturo got into the Dodge van and Lane got into the Plymouth sedan. Roy Chaisson got into the Ryder truck and flashed his headlights at which time another Ryder truck appeared and all the vehicles drove into the building. Lane then came out onto the street, looking around all the time,[1] and walked down Brookline Avenue toward Kenmore Square. As Lane approached an unmarked

---

[1] Testimony of Officer Clark, who was on duty across the street from the S. S. Pierce premises in a vehicle, follows in part: "He came out and stood around the corner, he was looking up and down the street and, you know, real suspicious like. . . . Then he started up toward one of our police cars . . . ." "He was looking around . . . . He looked around, both sides . . . up the street . . . looking in cars." "He looked everywhere."

police car he looked in at the occupants. Lane started toward a telephone booth when police officer Moran, after consulting with Sergeant Doyle, arrested him. Lane was informed of his rights.[2]

Some of the police officers then entered the building. Detective Donovan identified himself to the defendant Roger Chaisson and asked him the whereabouts of the three trucks which had just entered the building. Chaisson replied that he didn't know what the officer was talking about. He was then placed under arrest for breaking and entering in the nighttime. Roy Chaisson then appeared and he was arrested for unlawful possession of a firearm. Both defendants were informed of their rights.

Officer Clark went to the shipping area and saw Maturo standing between a loading platform and a truck with his hand on a case of whiskey. Maturo appeared to be perspiring, his white shirt looked dusty and dirty and the sleeves were rolled up. Sergeant Doyle entered and, after viewing the surroundings, placed Maturo under arrest.

The loading dock contained about 300 cases of liquor, some piled near the edge of the platform. There were cases of liquor in one of the Ryder vans. Lane's Plymouth sedan was parked with its trunk wide open and the spare tire was visible in the back seat of the car. The defendants' explanation of their presence in the S. S. Pierce premises apparently was not considered worthy of belief by the jury.

The defendants contend that their motions to suppress the evidence and their motions for directed verdicts should have been granted; that the trial judge displayed bias and prejudice against the defendants; and that the judge's instructions to the jury, on burden of proof, were erroneous. There was no error.

---

[2] Testimony of Officer Moran whose observations were made from an unmarked radio-equipped car: "I in turn had a conversation with Sgt. Doyle. . . . I saw . . . [t]he guard, the defendant Lane, approaching us . . . . [H]e looked right at us . . . walked by us, and turned [around] and looked back at us. . . . He approached the telephone booth . . . . I said, 'You are under arrest.' "

· ·There are ample grounds on which to find probable cause for arrest. The police, after being alerted from an undisclosed source, observed a number of events of an unusual nature involving the defendants. The officer in charge of the surveillance had been assigned to the district for twenty years. It is reasonable to assume that he knew that the facilities were not open to business on Saturday nights, and that he was familiar with the normal working routine of the warehouse, including the number and identity of the security guards and their duties. Normally there was but one guard on duty on Saturday nights. The police had observed three of the defendants enter and leave the building before Lane was arrested. The fact that the four defendants were employed by the Northeast Security Company, and were in uniform at the time, did not ipso facto make their presence legitimate and hence preclude their lawful arrests.

The officers were warranted in concluding that they were witnessing an illegal entry in the premises of S. S. Pierce by a group of men acting in concert. The first arrest was precipitated by an apparent attempt by the defendant Lane to warn his confederates within the building of the presence of the police officers. The police were engaged in a coöperative effort in radio-equipped cars. Hence the knowledge of one officer is imputed to all officers. *Commonwealth* v. *McDermott,* 347 Mass. 246. *Commonwealth* v. *Ballou,* 350 Mass. 751. We find that Lane's arrest in the context of all the evidence was based on probable cause, in view of his actions in moving a vehicle inside the warehouse, and his peculiar behavior viewed by police seated in an unmarked police car. See *Commonwealth* v. *Roy,* 349 Mass. 224, 228. Also in context with the other evidence we find Roger Chaisson's evasive replies to the questions propounded by the police sufficient grounds for arrest. *Commonwealth* v. *Spezzaro,* 250 Mass. 454. The other two defendants had been observed acting together with Lane outside the building and the evidence furnishing probable cause for Lane's arrest was applicable against them. See *Commonwealth* v. *LePage,* 352 Mass. 403, 411; *Commonwealth* v. *Blackburn,*

354 Mass. 200, 202; *Piva* v. *United States,* 387 F. 2d 609
(1st Cir.).

The cases cited by the defendants are clearly distinguish-
able. The suspects in the case of *Commonwealth* v. *Rossetti,*
349 Mass. 626, and *Commonwealth* v. *Dirring,* 354 Mass. 523,
were observed doing things which could be construed as
normal. In the instant case the activities of the defendants
over a period of several hours were far from normal in the
circumstances.

The defendants' arguments as to illegal search and seizure
of the evidence have no merit. The evidence clearly indi-
cates that the cases of liquor were in plain sight including the
liquor in the Ryder truck which could be observed through
open doors. Moreover, in our view the defendants have no
standing to object to this evidence. Although claiming
constitutional protection by reason of their jobs as security
guards the defendants are in no better position in this re-
spect than a bank teller caught after bank hours trying to
break open the safe. See *Katz* v. *United States,* 389 U. S.
347; *Mancusi* v. *DeForte,* 392 U. S. 364.

That there was ample evidence in the cases for jury con-
sideration deserves no further elaboration from us. *Com-
monwealth* v. *Conroy,* 333 Mass. 751. A careful examination
of the record reveals no prejudicial error in the judge's in-
struction to the jury or in the judge's conduct in presiding
over the trial.

                                    *Judgments affirmed.*