COMMONWEALTH *vs.* AVINE HAWKINS.

Suffolk. November 2, 1971. — March 13, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Search and Seizure. Probable Cause. Arrest. Police.*

A seizure by police of stolen government bonds not described in a valid search warrant for drugs but discovered while the police were executing the warrant on premises of the defendant in an indictment for receiving the stolen bonds was illegal where, although the names on the bonds were of persons other than the defendant, the police had no knowledge that the bonds had been stolen until they made a telephone call from the premises following seizure of the bonds. [386–387] BRAUCHER, J., dissenting.

INDICTMENT found and returned in the Superior Court on March 6, 1970.

A motion to suppress was heard by *Sullivan*, J., and the case was tried before *Dwyer*, J.

*Joseph F. Annunziata, Jr.*, for the defendant.

*Richard E. Rafferty*, Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   The defendant's appeal under G. L. c. 278, §§ 33A–33G, following conviction for receiving stolen government bonds, raises the following issues: (1) the validity of the search warrant, (2) whether the stolen bonds were the subject of a legal search and seizure, and (3) the correctness of the judge's ruling admitting in evidence a Blue Cross-Blue Shield identification card and the Bank Americard found on the defendant.[1]

For our purposes we assume the validity of a search warrant authorizing a search for drugs.   We discuss whether the seizure of the government bonds was based on probable cause and whether the defendant's motion for their suppression should have been allowed.   The evidence relating to the issue is as follows.   The police officers, pursuant to a warrant authorizing the search for drugs in an apartment shared by the defendant and a codefendant, who was found not guilty, searched the apartment and found no drugs.   In the course of the search Officer Arthur McNamara found in a bureau drawer a "Vanity Fair container" in which was a brown envelope containing several United States savings bonds with names and addresses different from that of the defendant.   He took the bonds to another room and handed them to Police Sergeant Lawrence McNamara who had him look up in the telephone book the number of one of the persons whose name and address appeared on the bonds.   Sergeant McNamara then called one Reverend Weeks.   After this telephone conversation the defendant was placed under arrest.   Sergeant Savioli then searched the defendant and found a Blue Cross-Blue Shield identification card in the name of Thomas J. Weeks.   Until the call was made

---

[1] The cards were seized after the defendant's arrest for possession of stolen bonds and therefore the correctness of the ruling is dependent on the validity of the arrest.

the officers had no knowledge that the bonds were stolen.[2]

Reverend Weeks testified that certain bonds were stolen from his residence and that the theft was reported to police station 9. The stolen bonds were later identified by him as his property. There was no evidence that any of the police officers in the search (one of whom was from police headquarters) were aware of the theft reported to station 9. Nor was there any evidence as to how the information given to the police was handled, conveyed or distributed to other police officers or stations, or, in general, as to what the police practice was in these matters.

Articles not named in a search warrant, except weapons or contraband, may be seized only if the police have probable cause to believe that they were stolen. "[I]n almost every case in which such a seizure has been upheld . . . the officer making the seizure then knew or had probable cause to believe that the articles were stolen." *Commonwealth* v. *Wojcik,* 358 Mass. 623, 628, and cases cited therein. In the instant case the police admitted they had no actual knowledge that the bonds had been stolen until after investigating their ownership. The mere fact that the names on the bonds were different from that of the defendant was insufficient to provide probable cause for their seizure.

In the face of the denial by the police, who conducted the search, of any knowledge that the bonds were stolen, we are compelled to conclude that the seizure was not based on probable cause and that the subsequent arrest was illegal. It follows that the motion to suppress should have been allowed. We cannot, in the circumstances of this case, apply "the elementary rule of composite knowledge of police officers engaged in a coöperative effort, where the knowledge of one may be the knowledge of all." *Commonwealth* v. *Ballou,* 350 Mass. 751, 757. *Common-*

---

[2] The testimony of Sergeant McNamara was that: "As a result of information [he] received . . . [he placed the defendant] under arrest . . . ." Officer McNamara stated that up to the time of the telephone call "there was no knowledge that these bonds were stolen. . . . After the conversation with Reverend Weeks . . . [he] knew they were contraband."

*wealth* v. *McDermott*, 347 Mass. 246.[3] In the instant case the police were not aware of the theft reported to station 9 nor were they engaged in a coöperative effort with officers in connection with the stolen bonds who did have this knowledge.

In concluding that there was error in denying the motion to suppress the stolen bonds, we are aware that the evidence to be suppressed points overwhelmingly to the defendant's guilt. That as a result of suppression a guilty person may go free is serious and regrettable. However, it would be far more dangerous and harmful to the cause of justice to establish a precedent which would allow police who have procured a warrant permitting a search for a specific item then indiscriminately to seize other belongings for the purpose of further investigation. Such tactics cannot be tolerated. The officers here undoubtedly proceeded upon an honest belief that they were acting within the law. They had a right to look into the brown envelope in their search for drugs. Once having ascertained the presence of bonds instead of drugs and without probable cause to believe they were stolen, their authority to possess the envelope and its contents ended.

A contrary rule would deprive the defendant *and every other citizen* of the protection afforded by the Fourth Amendment to the Constitution of the United States, "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to

---

[3] In *Commonwealth* v. *McDermott, supra,* at 249, we stated: "It is without significance that Trooper Nielsen [who had the requisite knowledge] was not one who made the arrest. The three officers were engaged in a coöperative effort in the performance of their duty. The knowledge of one was the knowledge of all." See *Commonwealth* v. *Chaisson,* 358 Mass. 587, 590.

what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron* v. *United States,* 275 U. S. 192, 196. *Stanford* v. *Texas,* 379 U. S. 476, 485.

In the circumstances of this case it might appear to some that the defendant is being given unwarranted protection. However, if the situation in the instant case were transposed to a different setting, for example to the home of a person of wealth, it would appear irrational to argue that United States government bonds could be taken from his possession, even momentarily, in order to establish their ownership. It is fundamental in our concept of justice that the denial of constitutional protection to the worst of men effectively serves to deny the same protection to the best of men.

*Judgment reversed.*
*Verdict set aside.*

BRAUCHER, J. (dissenting) I agree that the police did not have probable cause to seize the bonds until they had probable cause to believe that the bonds had been stolen. They acquired such probable cause only after they made a telephone call to an owner named on one of the bonds.

I also agree that the police had a right to look into the brown envelope in their search for drugs. But they were under a duty to keep the defendant's belongings in order and were therefore justified in noting that the articles were United States savings bonds with names and addresses different from that of the defendant. Compare *Harris* v. *United States,* 390 U. S. 234, 236. Such bonds are not transferable. 31 U. S. C. § 757c (a) (1970). 31 C. F. R. (1971) § 315.15. *McDonald* v. *Hanahan,* 328 Mass. 539, 540. Their presence in a small apartment being searched for narcotics warranted a further threshold inquiry. See *Commonwealth* v. *Lehan,* 347 Mass. 197, 204; *Commonwealth* v. *Wilson,* 360 Mass. 557, 559–560; *Terry* v. *Ohio,* 392 U. S. 1, 22–23; *Sibron* v. *New York,* 392 U. S. 40, 69 (concurring opinion of White, J.).

If a threshold inquiry is unreasonably extended, there is danger to the security guaranteed by the Fourth

Amendment. See *Stanley* v. *Georgia,* 394 U. S. 557, 569–
572 (concurring opinion by Stewart, J.), where Federal
agents spent some fifty minutes exhibiting a discovered
lewd film, using the defendant's premises and his projec-
tor. But in the present case the police made a telephone
call which could have taken only a few minutes. There is
no indication that it prolonged the concurrent search for
narcotics. The telephone call was likely to produce a less
serious invasion of an innocent defendant's privacy than
the alternative of sending an officer out to investigate and
to bring back a new warrant.

The record indicates that the police took the bonds from
one room to another before they had probable cause. It
does not indicate a definitive "seizure" until afterwards.
Compare *United States* v. *Berkowitz,* 429 F. 2d 921, 924
(1st Cir.); *State* v. *Moriarity,* 268 F. Supp. 546, 566
(D. N. J.). Once they had probable cause they were
"not required to close . . . [their] eyes to the realities of
the situation," but could lawfully seize the bonds.
*Seymour* v. *United States,* 369 F. 2d 825, 826–827 (10th
Cir.), cert. den. 386 U. S. 987. *United States* v. *Berko-
witz, supra,* at 924–925. See *Harris* v. *United States,*
390 U. S. 234, 236; *United States* v. *Palmer,* 435 F. 2d
653, 654–655 (1st Cir.).

I do not believe that it is proper for either the police
or this court to base a judgment on the assumed wealth
or poverty of the defendant. If police, acting lawfully in
searching a millionaire's mansion, found in a bureau
drawer in his bedroom United States savings bonds bear-
ing the names of several other people, they would have
solid reason for making further inquiry. Millionaires
have no more right to steal than anyone else.