USA v. Burke, et al.           CR-96-050-M    09/02/97
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


United States of America

        v.                              Criminal No. 96-50-1-6-M

John Burke, Stephen Burke,
Matthew McDonald, Patrick McGonagle,
Michael O'Halloran, and Anthony Shea


                          **O R D E R**


        Before the court are several motions filed by defendants
Matthew McDonald and Anthony Shea.


A.     McDonald's Motion in Limine to Require Offer of Proof.

        The government has provided McDonald with copies of several
taped recorded conversations between McDonald and Stephen
Connolly, made while the two were inmates at MCI Shirley.
McDonald asserts that the tapes do not incriminate him and is
concerned about the means by which the government will seek to
use them at trial.  Accordingly, he moves the court to compel the
government to disclose, by offer of proof in advance of trial,
the evidentiary basis upon which it intends to introduce those
portions of the tape(s) at trial.


        The government need not try its case in advance.  Defendants
are certainly free to object at trial if the government seeks to
introduce evidence inconsistently with applicable rules.

Accordingly, defendant McDonald's motion in limine (document no. 179) is denied.

B.   McDonald's Motion to Suppress Items of Clothing.

On Saturday, September 10, 1994, approximately two weeks after the Hudson armored car robbery, McDonald was arrested on outstanding warrants related to a domestic violence complaint and an assault.  After spending the night in custody at the Revere police station, McDonald was transferred to the Boston Area A Police Station.  The following Monday, he appeared before the Charlestown District Court.  The court found that he had violated the conditions of his probation and sentenced him to a term of imprisonment at the Suffolk County House of Correction/South Bay ("South Bay").  McDonald does not challenge the validity of his arrest nor does he claim that he was wrongfully sentenced to a term of imprisonment.

At South Bay, McDonald was issued a prison uniform.  His civilian clothing (a sweatshirt, pants, a belt, sneakers, and a t-shirt) was taken from him and placed into the property storage room.  According to South Bay's "Inmate Guidebook," an inmate must arrange for such "excess property" to be picked up by a friend or family member within 24 hours, otherwise it becomes subject to confiscation, donation to charity, and/or destruction. McDonald did not arrange for anyone to claim the items of clothing taken from him.

2

Subsequently, the government served a grand jury subpoena on South Bay, seeking "footwear worn by inmate Matthew McDonald when admitted into the facility." Upon learning that additional items of clothing had been taken from McDonald upon his incarceration, the government served a second grand jury subpoena on South Bay, seeking the production of McDonald's remaining personal effects.

After subjecting McDonald's clothing to forensic testing, the government obtained evidence which allegedly implicates him in the Hudson armored car robbery. McDonald moves to suppress all such evidence, claiming that he had an expectation of privacy in his articles of clothing and that the government unlawfully seized those items without first obtaining a search warrant. The government objects, relying primarily upon the Supreme Court's opinion in United States v. Edwards, 415 U.S. 800 (1974), in which the Court noted:

> [O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.

Id. at 807.

3

In an effort to distinguish the holding in Edwards, McDonald emphasizes that he was arrested and sentenced to prison for crimes wholly unrelated to the Hudson robbery. Accordingly, he claims that the government cannot rely upon Edwards, which involved the warrantless seizure of an inmate's clothing and subsequent forensic testing for evidence linking him to the crime for which he was arrested, to justify its warrantless search and seizure of his clothing. The court disagrees. The government's ability to remove an inmate's personal effects and search them upon his or her arrival at a correctional facility is not limited by, nor need it be related to, the nature of the crime for which the inmate was arrested or sentenced to imprisonment.

The United States District Court for the District of Colorado addressed this issue in substantially similar circumstances, concluding that:

> The holding in Edwards supports a warrantless seizure of [defendant's] property in this case. The defendant seeks to distinguish the case, arguing that because the search in Edwards was for evidence of the crime for which the defendant was arrested, the ruling is merely a reasonable extension of the well-established law permitting the police to make a warrantless search incident to arrest. Here, two days after the arrest of [defendant] on local charges, the FBI was looking for evidence connecting him with the suspected bombing of a building in Oklahoma City, a very different and much more serious matter than the misdemeanor charges on which he was being held. The legal significance of the difference is not apparent. The Fourth Amendment protects the privacy rights of persons, not property.

4

United States v. McVeigh, 940 F.Supp. 1541, 1557 (D.Co. 1996).

See also United States v. Klein, 522 F.2d 296, 300 (1st Cir.

1975); United States v. DeLeo, 422 F.2d 487, 497 (1st Cir. 1970).


That McDonald was in custody for a crime other than the
Hudson robbery is immaterial. Having been properly arrested and
sentenced to prison (facts which he cannot challenge), his
confiscated clothing was subject to search and/or seizure without
a warrant. Accordingly, McDonald's motion to suppress items of
clothing (document no. 182) is denied.


C.    McDonald's Motion to Suppress Blood, Saliva, and Hair.

McDonald also alleges that the search warrant for blood,
saliva, and hair seized from him was defective and, therefore,
all evidence obtained as a result of that warrant should be
suppressed. In support of his motion, McDonald says that the
fiber evidence referenced in the warrant application (which was
taken from clothing seized from him while incarcerated at South
Bay) was unlawfully obtained. He also claims that the
application for the warrant misrepresented the significance of
that fiber evidence.


McDonald's clothing was lawfully taken from the South Bay
Correctional Facility. See Section B of this Order. Although
the application for a warrant to seize samples of McDonald's
blood, saliva, and hair may have included an inaccurate

5

description of the significance of fiber evidence found on McDonald's sweatshirt, the other circumstances presented in the application were sufficient to support probable cause for the search. <u>See</u> Order, July 18, 1997 (document number 497), at 6 - 10. Accordingly, McDonald's motion to suppress (document no. 183) is denied.


D.   <u>Shea's Motion to Suppress Evidence Seized from 62 Old Ironside Way</u>.

Defendant Anthony Shea moves to suppress items seized pursuant to a search warrant executed in January 1990 from a residence at 62 Old Ironside Way in Charlestown, Massachusetts. Shea asserts that the warrant issued despite the lack of probable cause to believe that he had committed a crime or that evidence of a crime would be found at that location.


Agent James Bulis of the United States Treasury Department, Bureau of Alcohol, Tobacco, and Firearms, prepared and filed an affidavit in support of the warrant application, describing his investigation of Shea for possible violations of federal firearms laws. Bulis's affidavit states that Shea resided at 62 Old Ironside Way, that a confidential informant told him that he had seen a sawed-off shotgun (subject to National Firearms Registration) at that address on three occasions when Shea was present, and that Bulis's investigation found Shea had no firearms registered.

6

Probable cause is assessed from the totality of the circumstances presented in the warrant affidavit. See United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997). "Probable cause exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996) (quotation omitted). A "fair probability" or "substantial basis" for believing, not proof beyond a reasonable doubt, that the described search will provide evidence of a crime is all that is required to establish probable cause for a premises search. Khounsavanh, 113 F.3d at 283.

Shea contends that the warrant affidavit was insufficient to support probable cause for the search because it erroneously identified the house as his residence, when it was actually his mother's house and, although he had a key to the house and had lived there in the recent past, he did not actually live there when the warrant issued. Shea also claims that the warrant affidavit lacked requisite information about the confidential informant's knowledge of Shea.

The offense described in Bulis's affidavit, possession of an unregistered firearm, focuses on the possessor of the weapon and requires a connection between the suspect, Shea in this case, and

7

the firearm.  See 26 U.S.C.A.  § 5861(d); see also United States

v. Palmer, 435 F.2d 653, 655 (1st Cir. 1970) ("persons not

registered are not entitled to possession"); United States v.

Rodriguez, 931 F. Supp. 907, 928-29 (D. Mass. 1996) (possession

may be actual or constructive, exclusive or joint).  Thus, the

relationship between the firearm and Shea is important to a

probable cause determination.  See United States v. Zayas-Dias,

95 F.3d 105, 110-11 (1st Cir. 1996) ("warrant application must

demonstrate probable cause to believe that a particular person

has committed a crime -- the commission element -- and that

enumerated evidence relevant to the probable criminality likely

is located at the place to be searched--the nexus element."

[quotations omitted]).  Shea argues that the affidavit was

insufficient to establish probable cause to believe that he

possessed the weapon, because 62 Old Ironside Way was not his

residence.

Because the exclusionary rule was "designed to safeguard

against future violations of Fourth Amendment rights through the

rule's general deterrent effect," it is applied only when its

remedial purposes will be served.  Arizona v. Evans, 115 S. Ct.

1185, 1191 (1995).  For that reason, despite errors in the

warrant process, evidence will not be excluded if the officer's,

magistrate's, or judge's conduct was "objectively reasonable."

United States v. Leon, 468 U.S. 897, 919-20 (1984).  Accordingly,

when appropriate, the district court can bypass the merits of a

probable cause analysis and conduct a <u>Leon</u> review of the circumstances surrounding issuance of the search warrant to determine whether it was "obtained in an objectively reasonable manner." <u>Zayas-Dias</u>, 95 F.3d at 113.

In this case, even if the affidavit erroneously described 62 Old Ironside Way as Shea's residence, it has not been shown that Agent Bulis either knew the information was false or acted with reckless disregard of the truth. <u>See</u> Order, July 18, 1997 (document no. 497), at 5-6. Similarly, nothing in the affidavit suggests that the confidential informant's knowledge of Shea was unreliable or otherwise insufficient to provide trustworthy information about Shea's residence and his presence at the house, on three occasions, with the weapon. <u>See</u> <u>id.</u> Nothing that Shea points to undermines the objective reasonableness of Agent Bulis's affidavit or the issuing magistrate's reliance upon it. The search warrant, when the circumstances are considered in light of the <u>Leon</u> exemplars, was obtained in an objectively reasonable manner. <u>See</u> <u>Zayas-Dias</u>, 95 F.3d at 113; <u>see also</u> <u>United States v. Vargas</u>, 931 F.2d 112, 115 (1st Cir. 1991). Accordingly, Shea's motion to suppress (document no. 295) is denied.

E. <u>Shea's Motion to Preserve Recordings</u>.

Shea also moves the court to compel the government to "effect the preservation of all recordings of potential

9

government witnesses in federal custody or subject to federal control." Specifically, Shea moves the court to compel the government to preserve any recordings of inmate conversations which have been produced by the Bureau of Prisons and which involve individuals who may be called as government witnesses at trial. In its order dated July 15, 1997, the court addressed in detail the government's obligations under the Jencks Act, Rule 16, Brady, and Giglio with regard to the alleged Bureau of Prison tapes, as well as the court's role in enforcing those obligations. Neither the court's holding nor its reasoning need be reiterated here. It is sufficient to note that the prosecutors are well aware of their statutory and constitutionally derived disclosure obligations. At this juncture, there is no reason for the court to order the prosecutor to comply with discovery or disclosure obligations of which they are well aware and with regard to which they have assured compliance. In light of the foregoing, Shea's motion to compel the government to preserve all Bureau of Prison recordings (document no. 424) is denied.

## Conclusion

For the foregoing reasons, the court rules as follows with regard to the pending motions:

1. Defendant McDonald's motion in limine (document no. 179) is denied.

2. Defendant McDonald's motion to suppress items of clothing (document no. 182) is denied.

10

3.  Defendant McDonald's motion to suppress all evidence gathered from his blood, hair, and saliva samples (document no. 183) is denied.

4.  Defendant Shea's motion to suppress evidence seized from 62 Old Ironside Way, Charlestown, Massachusetts (document no. 295) is denied.

5.  Defendant Shea's motion to compel the government to preserve all Bureau of Prison recordings (document no. 424) is denied.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

September 2, 1997

cc:  David A. Vicinanzo, Esq.
     Peter D. Anderson, Esq.
     Matthew J. Lahey, Esq.
     Bruce E. Kenna, Esq.
     Douglas J. Miller, Esq.
     Michael J. Iacopino, Esq.
     Bjorn R. Lange, Esq.
     David H. Bownes, Esq.
     Edward D. Philpot, Jr., Esq.
     United States Marshal
     United States Probation

11