COMMONWEALTH vs. KETTY PIERRE.

No. 06-P-768.

Middlesex. October 9, 2007. - January 15, 2008.

Present: CYPHER, DREBEN, & COHEN, JJ.

*Practice, Criminal,* Motion to suppress. *Constitutional Law,* Search and seizure. *Search and Seizure,* Expectation of privacy, Warrant, Plain view, Probable cause.

A District Court judge properly denied a criminal defendant's motion to suppress evidence of hundreds of counterfeit compact discs (CDs) seized from cardboard boxes within a storage locker in the basement of the defendant's apartment building during the execution of a warrant authorizing police to search the defendant's apartment for the instrumentalities of illegal drug activity, where the defendant's privacy interest in the locker only required that the search be reasonable and lawful [61]; where the basement was located within the curtilage of the defendant's apartment [61-63]; where the terms of the warrant covered the storage locker and cardboard boxes within the locker that contained the CDs, in that they could have contained the instrumentalities of illegal drug activity [63]; and where the Commonwealth met its burden of establishing that the search was justified by the plain view seizure exception, given that the police were lawfully present in relation to the storage locker and the cardboard boxes that contained the CDs, and had probable cause to seize the CDs, based on their organization and physical appearance [63-66].

COMPLAINTS received and sworn to in the Cambridge Division of the District Court Department on September 7, 2005.

A pretrial motion to suppress evidence was heard by *Severlin B. Singleton, III, J.*

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*David F. Segadelli* for the defendant.

*Bethany Stevens,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Ketty Pierre, filed a motion in District Court to suppress evidence consisting of hundreds of compact discs (CDs) seized during a search. The evidence was the basis for one count of possession with intent to sell items bearing counterfeit marks (in violation of G. L. c. 266, § 147[*b*][1])[1] and one count of possession of recordings lacking the transferor's name on the outside label (in violation of G. L. c. 266, § 143C).[2] The motion judge denied the motion with the following endorsement: "search of [defendant's] basement warranted by search warrant, consent not required."[3] A single justice of the Supreme Judicial Court authorized the defendant's application for leave to file an interlocutory appeal with this court. The defendant argues that we should reverse the motion judge's ruling because (1) the search of the storage locker containing the CDs was not justified by the terms of the warrant; and (2) the Commonwealth did not meet its burden of establishing that the seizure was justified by the plain view seizure exception. We affirm the motion judge's denial of the defendant's motion to suppress.

*Factual background.* The following facts are undisputed and uncontroverted.[4] In March, 2005, Cambridge police Detective Edward Liberacki conducted an investigation of the defendant's

---

[1]General Laws c. 266, § 147(*b*)(1), as inserted by St. 1998, c. 115, provides, "Whoever willfully manufactures, uses, displays, advertises, distributes, offers for sale, sells or possesses with intent to sell or distribute any item or services bearing or identified by a counterfeit mark shall be punished as follows: (1) if the violation involves 100 or fewer items bearing a counterfeit mark or the total retail value of all items bearing or of services identified by a counterfeit mark is $1,000 or less and is a first offense, by imprisonment in a jail or house of correction for not more than two and one-half years."

[2]General Laws c. 266, § 143C, as amended by St. 2004, c. 395, § 4, provides, "Whoever for commercial advantage or private financial gain knowingly manufactures, rents, sells, transports, or causes to be manufactured, rented, sold, or transported, or possesses for purposes of sale, rental or transport, any recorded device the outside packaging of which does not clearly and conspicuously bear the true name and address of the transferor of the sounds or images contained thereon shall be punished as provided in section 143E."

[3]There was evidence that the defendant consented to the search. She signed a consent form and gave the officers the necessary key. We do not reach this issue of consent.

[4]An appellate court may consider "evidence [that] is uncontroverted and undisputed . . . where the judge explicitly or implicitly credited [a] witness's testimony." *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007).

brother, Jimmy Pierre, pursuant to a tip from a confidential informant with whom Liberacki had worked in the past regarding purchases of narcotics. The investigation led Liberacki to link Jimmy with the defendant's place of residence, 77 Elm Street, apartment number 4, in Cambridge (apartment). At about 2:30 P.M. on May 20, 2005, Liberacki, along with about eight other police officers, executed a search warrant for the apartment, which was located on the second floor of the building. The search warrant authorized the police officers to seize from the apartment, Jimmy's person, and Jimmy's car, documentation and paraphernalia related to Jimmy's alleged drug activity, as well as documentation establishing control and custody of the apartment.

The police officers discovered storage lockers in the basement of the building during the course of the search. Specifically, Liberacki noted, "There was a back stairway . . . to the rear of the apartment, kind of off the kitchen. . . . I followed that down to the lower level which led to the basement. And in the basement there were storage lockers that were locked and numbered."

A search of the storage locker corresponding to the defendant's apartment number revealed "several boxes of CDs and DVDs — mostly CDs[,] . . . several electronic scales, five boxes of ammunition, and numerous rounds of loose ammunition." Liberacki specifically observed that there were hundreds of CDs that looked like generic unlabeled CD-Rs, contained in cases with photocopied covers and grouped in similar units of five to fifteen with some covered in plastic.[5] The police officers seized the CDs. The defendant was not arrested at the time of the seizure.

On May 25, 2005, Howard Donahue, a consultant for the Recording Industry Association of America, assisted Liberacki in inventorying the counterfeit CDs. They classified thirty-six CDs and two digital video discs (DVDs) as counterfeit, and 625 CDs and one DVD as "pirate."[6]

*Discussion.* "Our standard of review with respect to motions

---

[5]A "CD-R" is a "compact disc, recordable." It is a blank compact disc on which data can be recorded. Data recorded onto a CD-R cannot be altered or erased.

[6]Counterfeit is defined as "made in fraudulent imitation: produced with

to suppress is well known. We accept the motion judge's findings of fact absent clear error, acknowledging that the weight and credibility of testimony is for the judge hearing the motion, but we review independently the motion judge's ultimate findings and conclusions of law. . . . 'Our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found.' " *Commonwealth* v. *Pena*, 69 Mass. App. Ct. 713, 717 (2007), quoting from *Commonwealth* v. *Clark*, 65 Mass. App. Ct. 39, 43 (2005).

1. *The defendant's reasonable expectation of privacy in relation to the storage locker.* The defendant argues that the motion judge should have granted the motion to suppress because her privacy interest in the storage locker "was violated by the unwarranted and unreasonable intrusion by law enforcement." Specifically, the defendant contends that her ability to exclusively control access to her storage locker vested her with a reasonable expectation of privacy, despite its location in the basement. The defendant's argument has merit. Massachusetts courts have held that a locker in a not entirely private area may create a reasonable expectation of privacy. Compare *United States* v. *Chadwick*, 433 U.S. 1, 11 (1977) (locked footlocker at airport); *Commonwealth* v. *Weiss*, 370 Mass. 416, 419 (1976) (rental locker at airport); *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 386, 393 (1993) (locked mailbox in lobby of apartment building). However, the defendant's expectation of privacy in the storage locker relates only to the question whether the search implicated the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. It does not preclude the Commonwealth from "show[ing] that its search was reasonable and therefore lawful." *Commonwealth* v. *Pina*, 406 Mass. 540, 544, cert. denied, 498 U.S. 832 (1990).

2. *The scope of the search warrant.* The defendant also argues that the Commonwealth did not meet its burden of justifying the seizure of the evidence because the terms of the warrant did not specify the search of the basement, let alone the storage

intent to deceive." Webster's Third New International Dictionary 519 (2002). The verb pirate is defined as "to publish (as a book) without proper authorization esp. in infringement of copyright." *Id.* at 1723.

locker. In other words, the particularity requirement regarding places to be searched was not fulfilled. We do not agree with the defendant that the failure to specify the basement in the warrant should have precluded the search of the basement and subsequently the storage locker.

The concept of curtilage "helps to define where the police can search pursuant to a warrant." *Commonwealth* v. *McCarthy*, 428 Mass. 871, 874 (1999). In deciding whether a property's curtilage extends to a specific area, we may consider "four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States* v. *Dunn*, 480 U.S. 294, 301 (1987). The test is not a determinant but rather an aid in ultimately deciding "whether the area in question 'harbors those intimate activities associated with domestic life and the privacies of the home.' " *Commonwealth* v. *McCarthy*, *supra* at 874, quoting from *United States* v. *Dunn*, *supra* at 301 & n.4.

The focus of the inquiry here with respect to the curtilage of the defendant's apartment is initially the basement itself. Access to the basement was not restricted. A search of a basement as a common area may not require a warrant when a defendant lacks exclusive access. *Commonwealth* v. *Pacheco*, 21 Mass. App. Ct. 565, 569 n.4 (1986). The defendant even notes the possibility that "the basement [was] outside the sphere of her expectation of privacy." The unrestricted access to the basement and the presence of multiple storage lockers there creates the reasonable inference that the defendant did not exclusively control access to the area. Compare *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. 629, 636-638 & n.11 (1997).

The relationship between the defendant's apartment and the basement meets the curtilage test set out in the *Dunn* decision. First, the stairs in the defendant's kitchen that linked the apartment to the basement suggest that the basement was sufficiently proximate to the apartment. Compare *Commonwealth* v. *Wallace*, 67 Mass. App. Ct. 901, 902 (2006) (affirming denial of defendant's motion to suppress evidence obtained in search of

attic not specified in warrant where defendant's apartment was connected to attic and where "the attic had all the indicia of being part and parcel of the second-floor apartment, thus supporting the judge's conclusion that the warrant was intended to authorize, and did authorize, the search of the attic area").

Second, despite the fact that two floors separated the apartment and the basement, the curtilage of the apartment could still cover the basement with respect to "separate areas subject to the [tenant's] exclusive control." *Commonwealth* v. *McCarthy*, 428 Mass. at 876, quoting from *Commonwealth* v. *Thomas*, 358 Mass. 771, 774-775 (1971). Each storage locker in the basement of the defendant's building corresponds to one apartment. It is reasonable to infer that the tenants have exclusive access and therefore control over the lockers assigned to their respective apartments. We conclude that the basement was located within the curtilage of the defendant's apartment and that the warrant authorized the search of the basement as an "area appurtenant . . . and within the curtilage." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 8-3[b] (2006-2007).

We also conclude that the storage locker and the boxes containing the CDs were covered by the terms of the search warrant. Although, as the Commonwealth admits, "[t]here is no dispute that the search warrant only authorized the police to search for cocaine and records related to the purchase and sale of cocaine," "[t]he police . . . were entitled to search any container that 'could conceal items of the kind portrayed in the warrant.'" *Commonwealth* v. *D'Amour*, 428 Mass. 725, 731 (1999), quoting from *United States* v. *Gray*, 814 F.2d 49, 51 (1st Cir. 1987). The police officers here could have reasonably inferred that the cardboard boxes in the storage locker that held the CDs, about two feet by one foot, as well as the cases of the CDs, contained the instrumentalities of illegal drug activity specified in the search warrant.

3. *The plain view seizure exception.* Finally, the defendant argues that the seizure does not fall within the plain view exception because (1) the police officers were not lawfully present in relation to either the basement or the storage locker and therefore did not have lawful access; and (2) the incriminating nature of

the CDs was not immediately apparent to Liberacki because his "familiarity with what was seized was doubtful" due to his "training and extensive experience in drug enforcement investigations."

The plain view seizure exception allows police to seize an object without a warrant if they "are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if [they] have a lawful right of access to the object." *Commonwealth* v. *D'Amour, supra* at 730-731, quoting from *Commonwealth* v. *Santana,* 420 Mass. 205, 211 (1995). "Our cases have also required that the police come across the item inadvertently." *Commonwealth* v. *D'Amour, supra* at 731. The defendant does not challenge the inadvertent nature of the CDs' discovery. The conclusion that the police officers were lawfully present and therefore had lawful access when they seized the CDs because the storage locker was located within the curtilage of the defendant's apartment is supported by the record.

First, as we have discussed, the police officers were lawfully present in relation to both the storage locker and the cardboard boxes that contained the CDs because the terms of the warrant allowed for the search of both. Second, the police officers had probable cause to seize the CDs. See *Commonwealth* v. *De-Masi,* 362 Mass. 53, 58 (1972) (when police are lawfully present "on certain premises pursuant to a valid search warrant, they have a right to seize articles not named in the warrant if they know or have probable cause to believe" in the illegality of the articles).

"Probable cause to seize evidence rests on knowledge of the facts and circumstances that would have warranted a person of reasonable caution in believing that the thing possessed is evidence of crime." *Commonwealth* v. *Cullen,* 62 Mass. App. Ct. 390, 402 (2004). The organization and the physical appearance of the CDs were sufficient for Liberacki to reasonably infer that they were counterfeit copies intended for sale. During the motion hearing, Liberacki testified to an earlier incident in which Cambridge police officers executed a search warrant to seize counterfeit or pirated CDs after such CDs had been purchased from local stores. The resulting knowledge, combined

with the absence of markings on the CDs, the photocopied covers on the cases, the organization of the CDs into like groups (some of which were covered in plastic), the presence of the CDs amidst ammunition and electronic scales, and the quantity of the CDs, sufficed to establish the incriminating nature of the CDs.[7]

The defendant also attempts to disprove the immediately apparent incriminating nature of the CDs by analogizing her case to *Commonwealth* v. *Hawkins*, 361 Mass. 384 (1972), and *Commonwealth* v. *Cruz*, 53 Mass. App. Ct. 24 (2001). The Supreme Judicial Court reversed the denial of the defendant's motion to suppress in *Hawkins*, *supra* at 386-387, because the police officers who performed the search did not have probable cause to believe at the time of the seizure that the evidence in question was related to criminal activity without further investigation. In contrast, Liberacki, considering the circumstances and the facts of the search, had sufficient grounds to seize lawfully the CDs as contraband.

We likewise concluded in *Cruz*, *supra* at 34, that the incriminating nature of the evidence in question was not immediately apparent. The police officer who found the evidence in that case testified at the motion hearing on the subject of immediate apparency, "I was not exactly sure, no. I'm not a — I don't know anything about the stuff." *Ibid.* He needed expert aid and assistance before he could determine the incriminating nature of the evidence. Here, Liberacki already had adequate reason to believe that the CDs were contraband before the recording industry consultant reviewed the evidence a few days after the

---

[7]The defendant notes repeatedly that no Massachusetts appellate court has ever heard a case regarding either of the statutes under which she has been charged. Although this is correct, we may look to relevant authority in other jurisdictions. *McLaughlin* v. *Commonwealth*, 48 Va. App. 243 (2006), cited in the Commonwealth's brief, provides criteria to help us determine whether the defendant had the necessary intent to sell. Such criteria include whether the CDs had price labels, whether they were wrapped in cellophane, whether they were in boxes, whether there were customer lists, and whether the CDs were all different. *Id.* at 250. See *Hayward-El* v. *State*, 284 Ga. App. 125, 128-129 (2007) (defendant's motion to suppress properly denied based on evidence that police saw in plain view boxes of DVDs with low quality packaging, that some of the movies on the DVDs were still showing in theaters, and that there were multiple copies of the same DVD).

seizure. The defendant "argues that [Liberacki's] familiarity with what was seized was doubtful . . . a position supported by his testimony, where [Liberacki] sought to convey information from another officer." We disagree. The conclusion of the consultant merely confirmed, rather than wholly created, Liberacki's suspicion regarding the counterfeit marks and the absence of the transferor's information on the CDs and the cases.

For the reasons stated above, we conclude that the plain view seizure exception applied to the CDs discovered in the defendant's possession during the execution of the valid search warrant and that the motion judge correctly denied the defendant's motion to suppress.

> *Order denying defendant's motion to suppress affirmed.*