John VON UTTER, Jr., Petitioner,
Appellee,

v.

Donald P. TULLOCH, Respondent,
Appellant.

No. 7471.

United States Court of Appeals,
First Circuit.

Heard March 2, 1970.

Decided May 14, 1970.

1

Lawrence P. Cohen, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., John Wall, Asst. Atty. Gen., Chief, Criminal Div., Edmund Dinis, Dist: Atty., and Peter B. Gay, Asst. Dist. Atty., were on brief, for appellant.

Mitchell Benjoya, Boston, Mass., with whom Kevin M. Keating and Crane, Inker & Oteri, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Petitioner Von Utter was convicted in Massachusetts Superior Court for possession of narcotics in violation of the narcotics drug laws. The narcotics were seized in a search of his car pursuant to a search warrant issued to a Provincetown police officer. Petitioner's motion to suppress the evidence on the ground that the application for the warrant did not allege facts constituting probable cause was denied and his conviction was subsequently upheld by the Supreme Judicial Court. Commonwealth v. Von Utter, 1968 Mass.Adv.Sh. 559, 246 N.E.2d 806. Thereafter, Von Utter filed the instant petition for a writ of habeas corpus. In the district court, the Commonwealth, in addition to arguing the validity of the search warrant, attempted for the first time to support the seizure on the ground that it was a search incident to a lawful arrest. Although it did not ask for a decision on the merits, it did seek a remand of the case to the state court for an evidentiary hearing. The Commonwealth appeals from the order of the district court discharging the petitioner from custody.

I

The search warrant was accompanied by an affidavit and a memorandum setting forth the basis for the affiant's belief that a search of the petitioner's car would reveal quantities of LSD and marijuana. The memorandum, to the extent relevant, appears in the margin.[1]

In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court elaborated on the test to be applied in judging the validity of search warrants where the information set out in the affidavit is based in part on hearsay. The Court began by reaffirming the two-pronged test announced in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), that "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable'." The Court went on to

---

1. "1. Information received from a confidential informant who is an admitted user and is known by me personally to associate with convicted narcotic users, and the informant admittedly associates with convicted users, who have past convictions for narcotic violations, and who has a user's knowledge of narcotics.

2. Information received by me from Detective Robert Silva, who has information from a reliable informant as to dates of parties and names of persons in attendance to conform with the same type of information received from my confidential informant.

3. And information received from State Police Connecticut Narcotics Agents, Trooper Hall and Trooper Reynolds that John Joseph Von Utter is known to associate with convicted narcotic users.

4. Information from my confidential informant that John Joseph Von Utter will be operating a white VW 2 door sedan, Connecticut registration JJVU in Provincetown sometime between March 8–10, 1968 and will be containing a quantity of Marijuana, a Narcotic Drug and a quantity of Hallucinogenic Drug known as LSD (lysergic acid diethylamide).

5. All of the information received by me from my confidential informant has been confirmed by Narcotic Agents of the Massachusetts State Police and Connecticut State Police regarding the reputation of John Joseph Von Utter and the cars, owner and description, color, registration number."

hold, however, that where the affidavit falls short of this standard, the magistrate can go beyond the informer's tip and consider whether it and any other corroboratory information in the affidavit are sufficiently detailed "so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's reputation." *Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. at 589. The Court cautioned that *Aguilar's* standards must nonetheless inform the magistrate's decision. Thus, in order to find probable cause, the magistrate must be satisfied that the information disclosed by the informant, coupled with any other information contained in the affidavit, is at least as trustworthy as the informer's tip would need to be to stand alone under *Aguilar.*

■ Following the format prescribed in *Spinelli,* we begin by assessing the weight to be attributed to the informer's tip apart from the rest of the affidavit. It is apparent that the tip is deficient when measured by *Aguilar's* standards. On the issue of the informer's reliability the affiant did not represent that he had had any prior contact with the informer or that the latter had provided the authorities with accurate information in the past. Rather, he attested that the informant was an admitted user, had a user's knowledge of narcotics, and was known by the affiant personally to associate with convicted users. This description could fit any addict picked up by the police for a narcotics violation. Narcotics informants do not enjoy a reputation for veracity. Jaben

v. United States, 381 U.S. 214, 224, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965); Jones v. United States, 105 U.S.App.D.C. 626, 266 F.2d 924, 928 (D.C. Cir. 1959). Lacking corroboration,[2] information from so untested a source is unacceptable. *See* Wong Sun v. United States, 371 U.S. 471, 480, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); United States v. Elgisser, 334 F.2d 103, 110 (2d Cir.), cert. denied, Gladstein v. United States, 379 U.S. 879, 85 S.Ct. 148, 13 L.Ed.2d 86 (1964); United States v. Brennan, 251 F.Supp. 99, 103–104 (N.D.Ohio 1966).

■ Nor does the tip satisfy *Aguilar's* other test: there is no indication as to how the informant came by this particular information. The fact that the informant is known to associate with convicted users is insufficient to establish how he knew that one John Von Utter would have narcotics in his possession at a certain time and place. *Cf.* McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). To paraphrase *Spinelli,* "We are not told how the * * * source received his information—it is not alleged that the informant personally observed [Von Utter] at work or that he had ever [bought narcotics from] him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable." *See* Saville v. O'Brien, 420 F.2d 347 (1st Cir. 1969), cert. denied 398 U.S. 938, 90 S.Ct. 1840, 26 L.Ed.2d 270.

We must, therefore, deal with the question of whether the facts set out in the informant's tip augmented by information supplied by the police could lead a magistrate reasonably to believe that

---

2. In Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), the Court, in sustaining an affidavit based on an informant's tip, said: "Thus we may assume that Didone had the day before been told, by one who claimed to have bought narcotics there, that petitioner was selling narcotics in the apartment. Had that been all, it might not have been enough; but Didone swore to a basis for accepting the informant's story. The informant had previously given accurate information. His story was corroborated by other sources of information. And petitioner was known by the police to be a user of narcotics. Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to scepticism than would be such a charge against one without such a history."

the information was reliable, was not derived from a casual rumor, or was not based merely on Von Utter's general reputation. *Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. 584. The detailed facts supplied by the informer are that Von Utter would arrive in Provincetown between March 8–10, driving a white VW 2 door sedan with Connecticut registration JJVU, and that the car would contain marijuana and LSD.

These facts bear a superficial resemblance to those in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959), in which the Court upheld a search incident to arrest on information supplied by an informant that Draper had gone to Chicago the previous day and that he would return by train with three ounces of heroin on one of two specified mornings. In addition, however, he described in meticulous detail the clothes Draper would be wearing, his habitual tendency to walk fast and the fact that he would be carrying a tan bag. As stated by the Court in *Spinelli, supra,* 393 U.S. at 417, 89 S.Ct. at 589, "a magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way." We are of the opinion that the detail set forth in the instant informer's tip is insufficient to permit a magistrate to infer that the informant spoke from personal observation or other particular knowledge of the criminal activity. There are obvious qualitative and quantitative differences between this information and that furnished in *Draper.* Most telling is the fact that although the informant reported that Von Utter would be in Provincetown between March 8–10, the applica-

tion for the warrant was not made until March 14. We think the instant case bears a stronger resemblance to *Spinelli* itself, where the informer supplied information that the defendant was using two telephones, described by number, and that these phones were being used to conduct illegal gambling operations. The Court held that "this meagre report could easily have been obtained from an offhand remark heard at a neighborhood bar." [3]

Nor is the deficiency remedied by any other information contained in the affidavit. The sum total of that intelligence is that a "reliable" informant had given Detective Silva the names of persons attending parties on stated dates which conformed with "the same type of information" received by the affiant's informant; that Von Utter was known by the Connecticut State Police to consort with convicted narcotic users; and that Von Utter's "reputation" and the description of his car had been confirmed by the state police. The information supplied by Detective Silva's informant is too vague to be of any value, and the mere assertion that an individual is "known" to be a criminal or to associate with criminals has been held inadequate to supply additional weight to otherwise insufficient allegations. *Spinelli, supra,* at 419, 89 S.Ct. 584. Notably, the affiant does not even disclose whether or not the car had arrived as predicted. The only conclusion that can be drawn is that this document falls short of the constitutional standard.

## II

In view of the foregoing, the Commonwealth's attempt to support the

---

3. Compare the extent of the detail in the informer's report in United States v. Repetti, 364 F.2d 54, 56 (2d Cir. 1966): "Appellant was arrested after an informant, who had proved reliable on twenty-five prior occasions, told an agent of the Federal Bureau of Narcotics that a man named Paul, white, five feet, four inches tall, weighing one hundred ten pounds, thin with a prominent nose, driving a customized black Mercury, bearing New York registration number 9T 4041, would be delivering an ounce of heroin at 135th Street and Fifth Avenue at five o'clock in the afternoon of August 2, 1963. Federal narcotics agents were posted at the place referred to by the informant. At five o'clock appellant drove up in an automobile fitting the informant's description."

seizure as a search incident to a lawful arrest does not require extended discussion. According to the Commonwealth the police officers approached Von Utter as he was coming out of a drug store and told him they had a warrant to search his car. He said there would be no need; he would *do* it himself. Thereupon he reached into the glove compartment, seized some contraband from it and fled on foot. The police gave chase, apprehended him and placed him under arrest. Thereafter they searched the car and found a quantity of narcotics.

On the record this is not a case where an arrest can be upheld on an independent *showing of probable cause*, even though the warrant turns out to be invalid. *See, e.g.,* United States v. White, 342 F.2d 379, 381 (4th Cir.), cert. denied, 382 U.S. 871, 86 S.Ct. 148, 15 L. Ed.2d 109 (1965); Williams v. United States, 273 F.2d 781, 790 (9th Cir.), cert. denied, 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868 (1960). Here the evidence in support of the Commonwealth's alternative contention, the action of the defendant, was initially tainted by the invalid search warrant. That defect was not remedied by what occurred afterwards. *Cf.* Wong Sun v. United States, *supra.*

Affirmed.