COMMONWEALTH *vs.* ROBERT KANE.

Suffolk.   September 12, 1972. — December 1, 1972.

Present: TAURO, C.J., QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Search and Seizure.   Arrest.   Probable Cause.*

Police officers who, under a valid warrant, discovered drugs in an apartment in which, according to a reliable informant, illegal drug activity had recently occurred and from which conversations about drugs had been overheard, had probable cause to arrest a defendant, known to one officer, who appeared at the apartment at the time at which a reliable informant said he would arrive with drugs. [658–661]

A warrantless search, conducted incident to the arrest of a defendant prior to the effective date of *Chimel* v. *California*, 395 U. S. 752, of a suitcase held by him was reasonable.   [661]

TWO INDICTMENTS found and returned in the Superior Court on July 9, 1969.

An application for interlocutory appeal, filed in the Supreme Judicial Court for the county of Suffolk on November 27, 1970, was reserved and reported by *Spiegel,* J.

*Henry D. Katz* for the defendant.

*Robert Snider,* Assistant District Attorney (*Timothy J. Spillane, Jr.,* Assistant District Attorney, with him) for the Commonwealth.

HENNESSEY, J.  Kane is charged, in two indictments, with possession of LSD, and possession of LSD with intent to sell it.  After hearing, a pre-trial motion to suppress from evidence a quantity of LSD was denied by a Superior Court judge.  A justice of this court allowed the defendant's application for an interlocutory appeal from the Superior Court judge's ruling.  G. L. c. 278, § 28E.

We summarize the facts as found by the Superior Court judge.  On May 22, 1969, a search warrant was issued authorizing a search for harmful drugs at apartment #2 at 124 Lake Shore Drive in Brighton.  This warrant was issued in response to an application and supporting affidavit of a Boston police officer named Edward D. Simmons.

At approximately 10 P.M. on May 22, 1969, Detective Linsky of the Boston police received a message from a confidential informant who had given reliable information which had resulted in narcotics convictions in two specific instances in the past and on other unspecified occasions.  This informant stated that ". . . Bobby Kane was going to the airport to meet a courier, or a man from California and was to return to the apartment at 124 Lake Shore Drive; and that Mr. Kane was to pick up a large quantity of L. S. D. tablets, which would be carried in a brown leather suitcase."  The informant also described some of the clothing Kane would be wearing.  Detective Linsky testified that he had known Kane since 1967, and had seen him on several occasions, but had never conversed with him.

A search pursuant to the warrant was conducted on May 23, 1969, by Detective Linsky, Officer Simmons and several other officers at apartment #2, 124 Lake Shore Road [1] in Brighton. The search began at approximately 12:30 A.M. and was concluded in about two hours. In the apartment the police found LSD, cannabis, and paraphernalia for smoking cannabis. At approximately 2:30 A.M., there was a knock at the door and Officer O'Malley opened it and called Detective Linsky. Linsky came to the door and observed two men, one of whom was known to him as Robert Kane. Kane was carrying a brown leather suitcase and was wearing the previously described articles of clothing. Detective Linsky immediately placed both men under arrest.

Linsky took Kane's bag into the apartment and searched it. In it he found 16,000 LSD tablets. The defendant was not resisting arrest, and Linsky stated that he did not know whether the bag contained a weapon. Further, Linsky disclosed that he did not attempt to get a search warrant for what he suspected was in the bag but merely opened it up and found a quantity of LSD.

Kane argues that his arrest was without probable cause and therefore the Superior Court judge erred in failing to suppress the LSD tablets discovered and seized pursuant to a warrantless search incidental to that illegal arrest. He also argues that, even if it is assumed that the arrest was valid, the warrantless search of his suitcase was beyond the permissible scope of a search incidental to an arrest, and that the evidence should have been suppressed for that reason.

1. Kane contends that his arrest was without probable cause in that it was based upon the uncorroborated tip of an informant. We do not agree. We conclude that there was probable cause for Kane's arrest. We recently examined the constitutional issues arising out of a search

---

[1] While the search warrant was issued for Lake Shore *Drive,* this technical discrepancy is irrelevant to the issues presented by this case.

and seizure after an informant's tip to police (*Commonwealth* v. *Stevens, ante,* 24), and we need do no more here than briefly summarize the following applicable principles. Credibility of the hearsay information supplied by an informant is established by meeting two requirements, viz. (1) there should be underlying facts and circumstances indicating the informant's reliability and (2) there should be underlying facts and circumstances on which the informant bases his tip that the defendant is engaged in criminal activity. An arrest and search may be upheld where the informant's tip fails for some reason to meet the above two-pronged test, provided that the tip is sufficiently corroborated by other sources. Various kinds of acceptable corroborations are discussed in the *Stevens* case, *supra.*

In the instant case the reliability of the informant was shown by the accuracy of similar information that had resulted in convictions in prior cases. However, there was no showing that the informant had disclosed underlying facts upon which he based his information. Nevertheless, the Commonwealth argues that there is sufficient corroboration because the informant accurately predicted the appearance, conduct and behavior of the defendant in substantial detail just as in *Draper* v. *United States,* 358 U. S. 307.[2] Kane maintains that the predictions of the informant fall short of meeting the requirements of the *Draper* case, particularly in that there was no evidence

---

[2] The Commonwealth, in its brief, sets out the following comparison between this case and the *Draper* case:

| "Draper | Kane |
|---|---|
| a) a federal narcotics officer, Marsh; | a) a Boston Police Officer, Linsky; |
| b) with 29 years of experience; | b) with 11 years of experience; |
| c) received a tip from an informant, one Hereford; | c) received a tip by an informant, unidentified; |
| d) utilized for about 6 months; | d) known to him for 4 years; |
| e) and who from time to time provided Marsh with information regarding narcotic violations found always to be reliable and accurate; | e) and who had in the past provided Linsky with reliable and accurate information concerning violations leading to several narcotic convictions; |

that Kane was at the Logan airport that night, or that he met a courier at the airport, or received a package from California. Compare *Commonwealth* v. *Rossetti,* 349 Mass. 626, and *Von Utter* v. *Tulloch,* 426 F. 2d 1 (1st Cir.).

Even assuming the correctness of Kane's contention that the considerable correlation between Kane's appearance and conduct, and the predictions of the informant, are not sufficient under the *Draper* case, the police had additional corroboration within their personal knowledge at the time of the arrest. They had already discovered cannabis and LSD in the apartment when Kane, suspected of carrying LSD, knocked on the door.[3] The po-

| Draper | Kane |
|---|---|
| f) on September 7, Hereford told Marsh that Draper had gone to Chicago the day before by train; | f) on May 22, 1970, at 10:00 p.m. the informant told Linsky that Bobby Kane was going to the airport to meet a courier from California; |
| g) that he was going to bring back 3 ounces of heroin; | g) that he was going to pick up a large quantity of LSD tablets; |
| h) that he would be carrying a tan zipper bag; | h) which would be carried in a brown leather suitcase; |
| i) when he would return by train to Denver either on the morning of September 8 or September 9; | i) and that he would return to the apartment at 124 Lake Shore Drive; |
| j) that Draper was a negro of light brown complexion, 27 years old, 5 feet, 8 inches tall, weighing about 160 lbs.; | j) that Kane had a mustache, sideburns and black hair; |
| k) and that he would be wearing a light colored raincoat, brown slacks and black shoes; | k) and that he would be wearing striped bellbottom pants and tan chino jacket; |
| l) Marsh arrested Draper without a warrant on September 9, at the station and searched his person and found heroin; | l) Linsky arrested Kane without a warrant at 2:30 a.m. on May 23, 1970; |
| m) and searched the brown zipper bag and found a syringe. | m) and searched the suitcase and found 16,000 LSD tablets." |

(Transcript references under the heading, "Kane," have been omitted.)

[3] The findings of the judge show that the search of the apartment started at approximately 12:30 A.M. and took about two hours to complete. Kane knocked on the door at 2:30 A.M.

lice also had information from a reliable informant that illegal activity with drugs had occurred in recent days in the apartment, and they had overheard conversations concerning cannabis from the apartment.[4] All of this knowledge lent significance to the conduct of Kane and constituted probable cause for his arrest. See *Commonwealth* v. *Chaisson*, 358 Mass. 587; *Commonwealth* v. *Cohen*, 359 Mass. 140; *United States* v. *Newsome*, 432 F. 2d 51, 53 (5th Cir.); *Buelna-Mendoza* v. *United States*, 435 F. 2d 1386, 1388 (9th Cir.); *United States* v. *Birdsong*, 446 F. 2d 325, 327–328 (5th Cir.).

2. Kane also argues that, even if his arrest was valid, the warrantless search of his suitcase was illegal. He relies principally upon the case of *Chimel* v. *California*, 395 U. S. 752, 759–761, and subsequent related cases. Since the suitcase was in the possession of the police, and beyond Kane's reach, he asserts that there was no exigency which justified the search without a warrant.

Kane's reliance on the *Chimel* case and subsequent cases is misplaced. The search of Kane took place on May 23, 1969. The effective date of the *Chimel* case was June 23, 1969, and that decision is not retroactive. *Williams* v. *United States*, 401 U. S. 646, 651. The pertinent inquiry (pre-*Chimel*) is whether the search of the suitcase incidental to Kane's arrest was reasonable. *United States* v. *Rabinowitz*, 339 U. S. 56. Under the law then applicable, the search clearly was reasonable. *Harris* v. *United States*, 331 U. S. 145.

Although we need not decide the question, there is some basis for concluding that the search was valid even under the rule of the *Chimel* case. *United States* v. *Mehciz*, 437 F. 2d 145 (9th Cir.). But see *United States* v. *Col-*

---

[4] These facts concerning the apartment had been included by the police in an affidavit accompanying their application on May 22, 1969, for the warrant to search the apartment. Kane appropriately does not argue that the search of the apartment was illegal. His standing to make such an argument does not appear in evidence. Further, the affidavit asserts sufficient facts to show probable cause for search of the apartment.

*bert,* 454 F. 2d 801 (5th Cir.), and *Sibron* v. *New York,*
392 U. S. 40, 61–65.

3. The order of the judge denying the motion to sup-
press was correct.  The case is to be remanded to the
Superior Court for further proceedings consistent with
this opinion.

*So ordered.*