COMMONWEALTH *vs.* PATRICK B. DURAN.

Suffolk.   December 5, 1972. — March 8, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Search and Seizure.   Arrest.   Probable Cause.*

In a prosecution for narcotics violations, where it appeared that a reliable informer in a distant city furnished information that marihuana was to be shipped to Boston via designated airplane flights in suitcases whose appearance was described and whose claim check numbers were given, that police officers at the airport in Boston observed, on the baggage carousel for an incoming flight substituted for a designated flight cancelled, suitcases fitting the description given and bearing the specified claim check numbers, and that they saw the defendant examine the tags on the suitcases and then remove the suitcases and walk away with them, whereupon they arrested him without having obtained a warrant and, upon opening the suitcases, found they contained marihuana, it was held that in the circumstances the failure to obtain a warrant before the arrest was not unreasonable, that there was probable cause for the arrest, and that the officers were not required to procure a search warrant after the arrest and before opening the suitcases. [231–235]

INDICTMENTS found and returned in the Superior Court on November 4, 1971.

The cases were heard by *Roy,* J., without jury.

*Francis C. Lynch, Jr.,* for the defendant.

*Robert Snider,* Assistant District Attorney, for the Commonwealth.

REARDON, J.   The defendant was convicted in cases taken under G. L. c. 278, §§ 33A–33H, of unlawful possession of cannabis (marihuana), and also of possession of marihuana with intent to sell.   Prior to trial he moved

to suppress certain evidence. This motion was denied by the trial judge who made findings of fact after a pretrial hearing. Thereafter the defendant waived a trial by jury and was found guilty on both indictments. The basic claim of the defendant is that the evidence, the admission of which he complains, was obtained by means of a warrantless arrest and an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

It was open to the judge to find as follows. About 8 A.M. on August 30, 1971, Special Agent Seth Nadel of the United States Treasury Department, Bureau of Customs, Customs Agency Service, received a telephone call from Special Agent Don Clements in Tucson, Arizona. Clements told him that he had received information from an informer, who had provided specific and correct information on a large number of other cases, including two in which Nadel had been involved, that a quantity of marihuana was being shipped in two suitcases to Boston from Tucson by way of American Airlines flight 246 to Chicago and, thence, direct to Boston on flight 214 due to arrive about 9:30 A.M. The two suitcases were described as a gray Samsonite, claim check No. 58-95-36, and a green suitcase, claim check No. 58-95-37. On receipt of this information Nadel called Sergeant Delaney of the Massachusetts State police, and then proceeded to their Logan Airport headquarters where he met the sergeant. They went to the American Airlines arrival area and discovered that flight 214 was delayed. About 11:30 A.M. they were told that it had been cancelled and that all passengers and baggage on that flight would be flown to Boston on TWA flight 240, arriving about 1:30 P.M. Both Nadel and Delaney proceeded to the TWA arrival area and established surveillance of the baggage carousel to be employed for flight 240. About 1:30 P.M. baggage began to arrive. Nadel and Delaney, standing near the carousel, saw two bags fitting the description given by the informer and bearing the designated claim check numbers. They also observed the

defendant standing near the carousel. The defendant looked first at something held in his hand and then at the tags on the bags. He removed the bags from the carousel and proceeded to walk away. Sergeant Delaney approached him and advised him that he was under arrest. He was handcuffed, given the *Miranda* warnings, and searched. An American Airlines ticket envelope containing a ticket and baggage tags matching those on the bags were found. The suitcases were removed to the State police office at the airport and opened, where it was discovered that they contained a total of fifty-six and a half pounds of marihuana.

1. We first consider whether the search was invalid by virtue of the failure of the police to obtain a warrant. *Trupiano* v. *United States*, 334 U. S. 699, established the rule that the failure to obtain a search warrant, when there had been full opportunity to do so, invalidates what would otherwise have been a search justified by the arrest. However, in *United States* v. *Rabinowitz*, 339 U. S. 56, the court stated, "To the extent that *Trupiano* . . . requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled." P. 66. Whether the *Trupiano* case has lost all life remains open to question. See e.g., the discussion in *Niro* v. *United States*, 388 F. 2d 535 (1st Cir.), suggesting that the case retains some vitality. See also *Vale* v. *Louisiana*, 399 U. S. 30, 35. Even assuming that the *Trupiano* case retains a certain vitality, the facts here would not appear to come within its scope. The crux of the *Trupiano* approach was that where the police had probable cause to search for a good length of time, they could not avoid the "inconvenience" of obtaining a warrant by waiting until they had executed an arrest and then justifying the search as incident thereto. The *Niro* case contains facts indicating that there was probable cause to arrest and search at least twelve hours prior to the actual arrest, and that the failure to obtain a warrant in that case was merely because of "inconven-

ience." In the present case, at least until the moment that the bags matching the descriptions as given from Tucson arrived, no probable cause existed and no warrant could have been obtained. As was noted in *Draper* v. *United States*, 358 U. S. 307, a case quite similar to this, crucial to the establishment of probable cause was the personal verification by police of details of information forwarded by the informer. In the present case, not until the bags arrived on the carousel could the officers confirm their appearance and know that the claim check numbers matched the bags as described by the informer.

There are circumstances in this case also which negate the possibility that failure to obtain a warrant was unreasonable and designed solely to avoid "inconvenience." The information came from the Tucson agent about one and a half hours before the flight was due to arrive in Boston. It was necessary for the officers to proceed to the American Airlines arrival area to set up their watch. It was, thus, not unreasonable by virtue of time pressures that they not endeavor to obtain a warrant en route. While the police learned around 9:30 A.M. that the flight was delayed, it was not until two hours later that they learned of the new route of the passengers to Boston. At that point they had only about two hours prior to the arrival of the rescheduled flight. The record is silent as to how many other officers were involved and how many individuals might be expected to carry out this type of operation. While it might indeed have been preferable for one of the officers to proceed to the nearest court for a warrant, it does not appear unreasonable in these circumstances that no officer did, and the entire situation cannot be compared to that in *Niro* v. *United States, supra.*

2. Since we conclude that the failure to obtain a warrant in the circumstances of the case was not unreasonable, we consider whether the police had probable cause to arrest the defendant. The arrest and search incident to it are valid if at the moment of arrest the arresting officer had such probable cause. We inquire, therefore,

"whether at that moment the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offence." *Commonwealth* v. *Stevens*, 362 Mass. 24, 26. *Beck* v. *Ohio*, 379 U. S. 89. An informer's tip in an analogous situation was held sufficient for probable cause for a warrantless arrest in *Draper* v. *United States, supra,* where a reliable informant, as here, gave a narcotics agent information that Draper was engaged in peddling narcotics. The informant advised the agent that Draper would be returning to Denver from Chicago by train on one of two mornings, and described Draper's appearance and clothing in detail. On the second morning the agent perceived Draper, as described, alight from an incoming Chicago train. He arrested and searched Draper and found heroin. The court indicated that when the agent confirmed each detail of the description except that Draper was carrying heroin, it was reasonable to assume that that fact was also true. In the present case there was detailed information given to the agent on the color and make of the bags, the numbers of the claim checks, and the schedules of the aircraft involved.

The defendant relies heavily on *Aguilar* v. *Texas*, 378 U. S. 108, and the two-pronged test there set forth, but the *Aguilar* case did not overrule the *Draper* case, and the *Draper* case indeed was reaffirmed in a dictum in *Spinelli* v. *United States*, 393 U. S. 410, 417, on the theory that the tips contained such detail that when the arresting officer verified most of it he could "reasonably infer that the informant had gained his information in a reliable way." See *United States* v. *Mitchell*, 425 F. 2d 1353 (8th Cir.), cert. den. sub nom. *Mitchell* v. *United States*, 400 U. S. 853.

The conclusions in *Von Utter* v. *Tulloch*, 426 F. 2d 1 (1st Cir.), are not inconsistent with the result we have reached here. The judge in that case stated that the information provided by the informer was insufficient to

constitute probable cause for the suspect's arrest, and said, at page 4: "There are obvious qualitative and quantitative differences between this information and that furnished in *Draper*." The specificity of the information in the present case is clearly more satisfactory than was shown in the *Von Utter* case. The details were reassuring as to the informer's reliability, and were clearly not such as could have been obtained "from an offhand remark heard at a neighborhood bar." *Spinelli* v. *United States, supra*, 417.

In sum, here we have an informer, whose information had proved reliable in dozens of similar situations, giving a detailed description of the suitcases, the claim check numbers, and the approximate time of their arrival in Boston. When the bags arrived they matched exactly the description which had preceded them. The officers were justified in believing that the informant's other piece of information, that they contained marihuana, was also true, and in arresting the person who claimed them after apparently matching the claim check numbers which they had been given with those held by the defendant. See *Commonwealth* v. *Franklin*, 358 Mass. 416.

3. Although it is not entirely clear from his brief, the defendant apparently argues also that, even assuming that the officers had probable cause for the arrest, they should have sought a search warrant after the arrest and before they opened the suitcases. He relies here on *Chimel* v. *California*, 395 U. S. 752. That case set certain legal limits to the privileges of the police to search after a valid arrest. In the circumstances here, involving a search of suitcases, the officers were not required to procure a search warrant after the lawful arrest. Just as the rule of *Chimel* is apparently not applicable to automobile searches (*Chambers* v. *Maroney*, 399 U. S. 42), it is also not applicable to the search of suitcases here. *United States* v. *Mehciz*, 437 F. 2d 145, 146–148 (9th Cir.). See *Commonwealth* v. *Kane*, 362 Mass. 656, 661–662. "We believe that the factors underlying the decision in *Chambers, i.e.*, mobility and the lack of undue

intrusion, apply with at least equal force to the suitcase involved here." *United States* v. *Mehciz, supra,* 147.

*Judgments affirmed.*