COMMONWEALTH vs. RONALD FOX.

Suffolk.    February 10, 1975. — March 11, 1975.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Arrest. Seach and Seizure. Probable Cause. "Threshold" Police Inquiry.*

Police officers, who had received a tip from an informant of unknown reliability, had probable cause to arrest a defendant who arrived at a location, at the time at which the informant said he would arrive with drugs, in a vehicle matching the description given by the informant and was observed placing a glassine bag containing a white substance inside a folded newspaper and conversing with an individual known by one of the officers as a person whom he had previously arrested for possession of heroin. [125]

The taking of a glassine bag containing heroin, which was thrown to the ground by a defendant as police officers were making a reasonable and justified approach to him, was not a seizure incident to the defendant's arrest. [125]

INDICTMENT found and returned in the Superior Court on July 7, 1972.

A pre-trial motion to suppress evidence was heard by *Roy*, J., and the case was tried before *McLaughlin*, C.J.

*James Michael Merberg* for the defendant.

*James Peter Hayes*, Assistant District Attorney, for the Commonwealth.

HALE, C. J.    After a trial held under the provisions of G. L. c. 278, §§ 33A-33G, the defendant was convicted of possession of heroin with intent to sell and was sentenced to a term of from nine to ten years. The case is before us on three assignments of error. We affirm the conviction.

The defendant assigns as error the denial of his motion to suppress the heroin "taken from his person or from his immediate surroundings." We summarize the evidence given at the hearing on that motion which the judge adopted as his findings of fact.

On June 20 and 21, 1972, detective Arthur Linsky of the Drug Control Unit of the Boston police department received telephone tips that one Ronald Fox, a black male driving a "triple white"[1] Cadillac, would deliver a quantity of heroin between 3:00 P.M. and 5:00 P.M. on June 21, 1972, in the vicinity of a named hot dog stand on Blue Hill Avenue in the Mattapan district of Boston. Linsky conveyed this information to the other four members of his "team", which included detectives O'Malley and Simmons. A plan of action was discussed and agreed upon pursuant to which the team proceeded to the area of the hot dog stand. O'Malley and Simmons, who were in O'Malley's private automobile, parked near the stand. The other officers, who were in an unmarked police vehicle, were also parked in the area. At about 4:00 P.M. Linsky reported by "walkie-talkie" that the defendant (who was known to him but not to the other officers) had parked his car beside Linsky's vehicle, had placed a glassine bag, containing what Linsky thought to be heroin, inside a newspaper, and had left his vehicle. O'Malley and Simmons observed a white Cadillac parked beside Linsky's vehicle. They saw the defendant, carrying a folded newspaper, leave the car and walk up the avenue past them, where he met an individual known to Simmons as a person whom he had previously arrested for possession of heroin. After a conversation the defendant and the other person turned and walked back toward the Cadillac. When the two had walked by, O'Malley and Simmons walked up behind them, and Simmons announced, "We are police officers." Immediately thereafter the defendant threw the newspaper toward the street. A glassine bag containing a white substance was seen to separate from the newspaper while in flight, and both articles fell to the ground near the Cadillac. They were forthwith retrieved by Simmons.[2] O'Malley immediately

---

[1] It appears that "triple white," used in this context, described a convertible automobile with a white top, white body, and white interior.

[2] Upon later analysis the bag was found to contain four ounces of forty-seven percent pure heroin valued at $7,500.

seized the defendant and after a struggle subdued and arrested him.

The defendant argues that the heroin was seized in the course of an arrest made without probable cause on the basis of the tip of an informant of unknown reliability and cites *Aguilar* v. *Texas,* 378 U. S. 108, 112-116 (1964). The telephone tips, having been received from an informant whose reliability had not been established, do not meet the *Aguilar* requirements. The defendant concedes that an arrest may be made on the basis of information which does not satisfy the *Aguilar* two-pronged test if such information is sufficiently corroborated by other sources. He asserts that the facts of the present case fail in that regard. We disagree. The tip was corroborated by the occurrence of the events predicted by the informant (*Draper* v. *United States,* 358 U. S. 307, 312-314 [1959]; *Commonwealth* v. *Duran,* 363 Mass. 229, 233 [1973]; *Commonwealth* v. *Anderson,* 366 Mass. 394, 400 [1974]) and by the observations of Linsky which were reported to O'Malley and Simmons. Compare *Commonwealth* v. *Chaisson,* 358 Mass. 587, 590 (1971); *Commonwealth* v. *Kane,* 362 Mass. 656, 660-661 (1972). We are of the opinion that there was probable cause upon which the arrest could have been made.

Quite apart from that, the heroin was not seized incident to the defendant's arrest. It had been abandoned by the defendant as the police were making a reasonable and justified approach to him. Compare *Adams* v. *Williams,* 407 U. S. 143, 146-147 (1972). In this respect our decision in *Commonwealth* v. *Battle,* 1 Mass. App. Ct. 579, 581-583 (1973), *S. C.* 365 Mass. 472, 474-476 (1974), is controlling.

We need not consider the two remaining assignments of error as they do not meet the requirements of G. L. c. 278, § 33D, in that they do not set forth specific grounds upon which the claims of error are based. See *Commonwealth* v. *Fleurant,* 2 Mass. App. Ct. 250, 251, n. 1 (1974). In any event, they are so devoid of merit that no discussion of them would be warranted.

*Judgment affirmed.*