COMMONWEALTH vs. VINCENT K. WOODEN.

Suffolk.   December 17, 1981. — April 15, 1982.

Present: GOODMAN, PERRETTA, & KASS, JJ.

*Arrest. Probable Cause. Search and Seizure. Constitutional Law*, Search and seizure. *Narcotic Drugs.*

Evidence that while three plainclothes police officers were patrolling in an unmarked police vehicle the defendant was observed walking with a companion, who showed him something, that the two men started to walk quickly away as they saw the strangers approach, that the defendant's companion dropped an envelope and the defendant stuffed something into his pockets, and that the police identified themselves, retrieved the envelope, and discovered that it contained a substance reasonably believed to be narcotics, warranted findings that the officers then had probable cause to arrest the defendant and to search his pocket. [420-422]

At the trial of a defendant charged with possession of cocaine and marijuana with the intent to distribute those drugs, a verdict of guilty was not warranted on evidence showing that the defendant possessed approximately five-sixths of an ounce of marijuana and one-fourth of an ounce of cocaine, that each substance was divided into six packets, and that the combined "street value" of the drugs was $660, without evidence from which it could be inferred that the quantity of the drugs was inconsistent with an inference of personal use. [422-424]

COMPLAINT received and sworn to in the Boston Municipal Court Department on August 16, 1979.

INDICTMENT found and returned in the Superior Court Department on January 10, 1980.

The cases were heard in the Superior Court by *Flaksman*, J., a District Court judge sitting under statutory authority.

*J. W. Carney, Jr.*, for the defendant.

*Bonnie Gottschalk*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J.   After a jury-waived trial, the defendant was convicted on charges that he possessed cocaine and mari-

juana with the intent to distribute those drugs. G. L.
c. 94C, § 32. On appeal he alleges error in the denials of
his motion to suppress and motions for a required finding of
not guilty of possession with intent to distribute. We reverse
the convictions on the greater offenses and remand for re-
sentencing on the lesser charges of possession.

About 10:00 P.M. on August 13, 1979, three plainclothes
police officers, Saunders, Williams, and Callanan, were in
an unmarked police cruiser patrolling the Park Square area
of Boston. Saunders testified that as they were driving
down Boylston Street, he observed two men, later identified
as the defendant and one Belmira Sena, walking in the
direction of the oncoming cruiser. Saunders testified that
he saw that Sena "had something in his hand, apparently
showing it to" the defendant. The two men walked past the
cruiser and turned left onto Carver Street. As the officers
entered Carver Street, the two men turned, looked at the
car, and "started trying to move rather quickly" down the
street. The officers pulled abreast of the men, and, as they
did so, Saunders saw Sena drop a manila envelope to the
ground. Williams, but not Saunders, saw that the defend-
ant had something clenched in his hand, and "he appeared
to be stuffing something in his pocket."

The officers got out of the car and identified themselves.
Callanan retrieved the manila envelope and gave it to Saun-
ders, who was standing near Sena. Upon opening the envel-
ope, Saunders saw "a few packages, magazine type packages,
wrapped in like newspaper." When Saunders opened these
packages he saw "a white powder." After making these ob-
servations, Saunders placed Sena and the defendant under
arrest.

Williams testified that when he got out of the car, he
stood in front of the defendant, telling him "to stay still for a
minute." Williams heard Saunders announce that Sena and
the defendant were under arrest. Williams testified that he
then told the defendant that he had seen him "stuffing
stuff" in his pockets and that he was going "to perform a
threshold search." Williams did not pat the defendant down;

rather, he reached into the defendant's pockets and removed twelve "little packets."

Six packets of cocaine were found in the envelope dropped by Sena, and twelve packets, six of cocaine and six of marijuana, were taken from the defendant by Williams. The Commonwealth has never charged the defendant with any offense related to the drugs in the envelope. Saunders described the six packets of marijuana taken from the defendant as "$10 bags" having a total "street value" of $60; the cocaine weighed 6.63 grams and had a "street value" of $100 a gram.

1. *The Motion to Suppress.*

In denying the motion to suppress, the judge made the following oral finding: "[T]his is not a routine stop and frisk without anything being noticed or without any actions being observed, it was a frisk after a talk with a defendant and it was after observing something happening by this defendant which the testimony indicated he had something in his hands and it disappeared by thrusting or shoving it into his pockets." The judge concluded that "[t]hese facts and these circumstances in and of themselves . . . warranted the search."

We deal first with the officers' "stop" of the defendant and Sena. Here the defendant argues that the police acted on the basis of seeing two men engaged in conversation walking down the street, one showing "something" to the other. The defendant claims that this observation was an insufficient ground upon which "to initiate contact with the two youths." If by this phrase the defendant means that the police acted improperly when they followed him and Sena onto Carver Street, he is wrong. We will not scrutinize police activity based on hunch or suspicion until such time as that activity clashes with individual rights. After the police first saw the two men, one showing something to the other, they neither stopped the men to make a threshold inquiry, see *Commonwealth* v. *Ferrara*, 376 Mass. 502, 504 (1978), nor did they pursue them "to effect a stop." *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981). We see

nothing improper about the inoffensive surveillance based on hunch.

Our analysis thus begins at the point where the police pulled abreast of the two men. The defendant argues that the fairest inference to be drawn from the facts is that Sena dropped the envelope because "he was startled and apprehensive at the imminent approach of the strangers." We view that inference as more generous than fair. Whether Sena dropped the envelope upon seeing the car or upon seeing three men alighting from it is not critical. The point is that the facts show that the officers immediately identified themselves and that Sena was leaving the envelope in his wake. These facts are inconsistent with any notion that Sena was frightened and inadvertently lost his grip on the envelope which was then retrieved by Callanan before Sena had the chance to reclaim it. Contrast *People* v. *Anderson*, 24 N.Y.2d 12 (1969). The key is that Sena's act was not prompted by any police misconduct. Compare Mascolo, The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis, 20 Buffalo L. Rev. 399, 400, 416, 419 (1971) ("[I]f overbearing conduct outside the realm of legitimate investigation falls beyond the pale of the fourth amendment, any attempt to exploit it by retrieving the fruits for subsequent use in a criminal prosecution should be condemned and suppressed under the same authority"). As the police did nothing "beyond the pale" to prompt Sena's decision to jettison the envelope, and as they did not intrude upon the rights of the two men until after the envelope was retrieved and its contents discovered, the matter is controlled by *Commonwealth* v. *Battle*, 365 Mass. 472, 475-476 & n.4 (1974). See *Commonwealth* v. *Fox*, 3 Mass. App. Ct. 123, 125 (1975); *Commonwealth* v. *Lanigan*, 12 Mass. App. Ct. 913, 914 (1981). Contrast *Commonwealth* v. *Thibeau*, 384 Mass. at 764-765.

The issue before us then narrows to whether the police had probable cause to arrest the defendant. He argues that, if probable cause existed, it related to Sena alone and that his (the defendant's) arrest was based on nothing more than

his association and presence with Sena. *Ybarra* v. *Illinois,*
444 U.S. 85 (1979). *Commonwealth* v. *Dirring,* 354 Mass.
523, 531 (1968).[1]  The Commonwealth argues that the
police had probable cause particularized to the defendant
because they "could reasonably infer in the circumstances
that the defendant had just given Sena the envelope he dis-
carded." The inference advanced by the Commonwealth is
too speculative to have any probative value. Such an infer-
ence could easily defeat the principles reinforced in *Ybarra*
v. *Illinois,* 444 U.S. at 92-93.

Nor do we agree with the defendant. By his argument,
he asks that we limit the circumstances of his arrest to the
facts as related by Saunders alone and that we not consider
the observation made by Williams prior to the actual arrest.
As Saunders observed Sena drop the envelope, Williams saw
that the defendant had something clenched in his hand and
that "he appeared to be stuffing something in his pocket."
Saunders did not have the benefit of Williams's knowledge,
and it does not appear from the transcript that Williams
was told what had been found in the envelope before he
reached into the defendant's pockets. Thus, if Williams
had been acting alone, he could not have arrested either
Sena or the defendant without knowledge of the contents of
the discarded envelope, see *Commonwealth* v. *Bacon,* 381
Mass. 642, 646 (1980). The same holds true of Saunders. If
acting alone, he could not have arrested the defendant on
the sole basis of the contents of the envelope dropped by
Sena. *Ybarra* v. *Illinois,* 444 U.S. at 92-93.

On the facts of the case, however, we do not think it fatal
to the defendant's arrest that neither Williams nor Saunders
gave the other the benefit of his respective observations.

---

[1] The validity of the defendant's arrest must be measured by the proba-
ble cause standard. Williams, by his own testimony, was not patting the
defendant down or frisking him for weapons because of his pocket stuffing
gesture: Williams was "perform[ing] a threshold search," in other words,
a search. Moreover, in its brief the Commonwealth specifically rejects
any notion that the defendant was stopped and frisked, and it contends
that the defendant was arrested on probable cause.

Here Saunders and Williams were working in concert, and they were within an arm's reach of each other as well as the suspects whom they were confronting. They were "in a close time-space proximity to the questioned arrest [and] search." LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 3.5(c), at 633 (1978). See *Commonwealth* v. *Chaisson*, 358 Mass. 587, 590 (1971); *Commonwealth* v. *Corridori*, 11 Mass. App. Ct. 469, 478 n.10 (1981).

Imputing Williams's knowledge to his fellow officer, we view the circumstances of the defendant's arrest as follows. The defendant is walking with Sena, who shows him something. As the two men see strangers approach, they start to walk away quickly, Sena drops an envelope, and the defendant stuffs something into his pockets. The police identify themselves, retrieve the envelope, and discover that it contains a substance reasonably believed to be narcotics. Contrast *Ybarra* v. *Illinois*, 444 U.S. at 92-93.

We do not hold that a gesture of stuffing something into one's pockets justifies, as matter of law, an investigatory stop or an arrest. However, we do conclude that the defendant's arrest was valid because that act of concealment existed "in conjunction with other circumstances," *Commonwealth* v. *Bacon*, 381 Mass. 642, 646 (1980), the totality of which gave rise to probable cause.

2. *Intent to Distribute.*

The Commonwealth showed that the defendant possessed 23.44 grams (less than five-sixths of an ounce) of marijuana and 6.63 grams (less than one-fourth of an ounce) of cocaine. Each of these substances was divided into six packets. According to Williams, the packets were approximately "an inch by two inches" in size. Saunders was found qualified to testify as an expert in narcotics investigations,[2] and gave his opinion that the "street value" of each of the marijuana and cocaine packets was $10 and $100, respectively. Not-

_____

[2] We see no abuse of discretion, as the defendant alleges, in the judge's determinations that Saunders could testify as an expert and give his opinion as to the "street value" of the drugs found on the defendant. See *Commonwealth* v. *Boyd*, 367 Mass. 169, 182 (1975).

withstanding his expertise, Saunders offered no information concerning the use of marijuana and cocaine from which it could be inferred that the gram weight of the drugs was more consistent with distribution than personal use. Neither money nor other items consistent with drug sales were found on the defendant or Sena, contrast *Commonwealth* v. *Davis,* 376 Mass. 777, 779 (1978); there was nothing about the size and value of any one packet to indicate that sales were intended, contrast *Commonwealth* v. *Scala,* 380 Mass. 500, 511 (1980); there was nothing to indicate that a sale was about to be, or had been, made to Sena or to a third party, contrast *Commonwealth* v. *Ortiz,* 376 Mass. 349, 350 (1978); and there was nothing to show that the defendant's drugs were part of a larger "stash." Contrast *Commonwealth* v. *Brown,* 12 Mass. App. Ct. 988 (1981).[3]

The Commonwealth argues that the defendant's intent to distribute the drugs can be inferred from the manner in which the drugs were packaged, the total number of packets (twelve), and their combined "street value" of $660. Evidence of the "street value" of drugs, however, does not, standing alone, transmute the quantity of the drugs involved, which was not here shown to be a quantity inconsistent with an inference of personal use. While in some of the cases cited and relied upon by the Commonwealth lesser amounts of drugs were in issue, there was evidence in addi-

---

[3] The cocaine found in the envelope discarded by Sena also had a $600 "street value." At the hearing on the defendant's motions for a required finding of not guilty, the Commonwealth combined the drugs found in the envelope with those found on the defendant to argue that an intent to distribute could be inferred from the fact that the defendant was involved with $1,200 worth of drugs. While the Commonwealth was free to charge and to prosecute the defendant on the basis of the drugs discarded by Sena, it never did. We will not now inferentially do so. Moreover, on appeal the Commonwealth does not urge us to look to the discarded drugs other than to argue that from the fact of "Sena's reactive throwing to the ground the envelope containing the powder," an inference could be drawn that what the police had seen just moments earlier "may well have been part of a sale or intended sale by the defendant to Sena." If that inference could reasonably be drawn, it seems to us that an equally available inference is that the sale was by Sena to the defendant.

tion to the drugs themselves which was susceptible of an inference of the intent to distribute and which was inconsistent with the notion of personal use. In addition to the previously contrasted cases, see *Commonwealth* v. *Battle,* 365 Mass. 472, 474 (1974); *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. 606, 609 (1976); *Commonwealth* v. *Sepulveda,* 6 Mass. App. Ct. 868, 869 (1978); *Commonwealth* v. *Rivera,* 6 Mass. App. Ct. 947 (1978).

Assuming that the criminal intent to distribute could have been inferred from the manner in which the drugs had been divided and packaged and from the character of the defendant's actions as observed by the arresting officers, one could equally infer that the defendant was returning from a transaction at which he had purchased the drugs for his personal use. "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *O'Brien,* 305 Mass. 393, 400 (1940). This is because "[i]n choosing among the possible inferences from the evidence presented, a jury necessarily would have to employ conjecture. This is insufficient to sustain the burden resting upon the Commonwealth." *Commonwealth* v. *Croft,* 345 Mass. 143, 145 (1962). See *Commonwealth* v. *Senati,* 3 Mass. App. Ct. 304, 306 (1975). The defendant's motions for required findings of not guilty on the greater offenses of possession with intent to distribute should have been allowed.

The judgments are reversed. The matter is remanded to the Superior Court where findings of not guilty are to enter on so much of indictment no. 028631 and complaint no. 028494 as charge him with the intent to distribute cocaine and marijuana. The defendant is to be resentenced on the findings against him on the lesser offenses. G. L. c. 278, § 12.

*So ordered.*